**Patrick GRAHAM, Plaintiff–Appellant,**

v.

**R.J. HENDERSON, Former Superintendent, Auburn Correctional Facility; Hans Walker, Superintendent, Auburn Correctional Facility; Lieutenant V. Mahunik; Sergeant M. Vasquez; C. Ciaschi, Correction Officer; Gary Anthony, Industrial Superintendent, Auburn Correctional Facility; William A. Gabak, General Foreman; John Nelson Decker, I.T.S., Defendants–Appellees.**

No. 660, Docket 95–2387.

United States Court of Appeals, Second Circuit.

Submitted Dec. 18, 1995.

Decided July 11, 1996.

---

(Patrick Graham, Ossining, NY, Pro Se).

(Dennis C. Vacco, Attorney General of the State of New York, Peter H. Schiff, Deputy Solicitor General, Peter G. Crary, Assistant Attorney General, Troy Oechsner, Assistant Attorney General, Albany, NY, of counsel), for Defendants–Appellees.

Before: KEARSE, MINER and PARKER, Circuit Judges.

PARKER, Circuit Judge:

Plaintiff Patrick Graham, *pro se* and incarcerated, appeals from an order of the U.S. District Court for the Northern District of New York (Harold Baer, Jr., *Judge*) dated June 14, 1995, which granted the defendants' motion for summary judgment, denied the plaintiff's cross-motion for summary judgment, and dismissed the complaint. The court held that inmate Graham failed to meet his threshold burden of demonstrating that prison officials had a retaliatory motive for filing misbehavior reports against him. Graham alleged that the reports were punishment for his leadership in protesting the proposed loss of showers in the prison industrial workshop, in violation of 42 U.S.C. §§ 1983 (civil action for deprivation of constitutional rights), 1985(3) (conspiracy to interfere with civil rights), and 1986 (action for failure to prevent § 1985 violation).

We hold that Graham met his threshold burden of establishing retaliatory motive, creating a genuine issue of material fact. Accordingly, we vacate so much of the judgment as dismissed the claim under 42 U.S.C. § 1983 and remand for further proceedings. We affirm the summary order dismissing the racial discrimination claims under 42 U.S.C. §§ 1985 and 1986.

## I. BACKGROUND

In his complaint filed June 1990, Graham alleges the following. On July 7, 1989, two Inmate Grievance Resolution Committee representatives visited the prison industrial workshop where Graham was working, at Auburn Correctional Facility, New York, in order to investigate grievances concerning the proposed elimination of showers in the workshop. Graham showed the representatives—Virginia Reddick, a corrections officer, and Kenneth Jenkins, a prisoner—around the workshop and agreed to obtain the names of four or five prisoners who would be willing to represent the other prisoners in the grievance process. After the representatives left, Graham went around the workshop and obtained the names of five inmates.

Sergeant Vasquez interrogated Graham regarding whether he was circulating a peti-

tion. Graham denied that he was. A search of Graham's personal belongings produced a piece of paper blank except for the names, numbers, and cell locations of five prisoners. Defendants shop foreman John Decker and Correction Officer C. Ciaschi wrote misbehavior reports charging Graham with violating prison rules prohibiting inmates from urging a work slowdown or stoppage. Prison rule 104.12 provides:

> Inmates shall not lead, organize, participate, or urge other inmates to participate, in work-stoppages, sit-ins, lock-ins, or other actions which may be detrimental to the order of the facility.

N.Y. Comp.Codes R. & Regs. tit. 7, § 270.2(B)(5)(iii). Both reports charge that Graham circulated a petition in the workshop and that after speaking with the other inmates, they would stop working.

Graham claims that he was neither circulating a petition nor urging a work slowdown, and that he and most of the other inmates did not have any work that day because there were no parts or production orders.

On July 12, 1989, defendant Lieutenant V. Mahunik conducted a disciplinary hearing regarding the misbehavior reports. Graham called eleven witnesses. Inmates Henn, Murphy, Hernandez, and Smith testified that Graham spoke to them individually at the workshop regarding their grievances over the proposed removal of the showers. The inmates denied that Graham was circulating a petition or organizing a work stoppage. Inmate Jenkins testified that seventeen inmates, including Graham, had filed grievances regarding the closure of the showers. Jenkins stated that he had asked Graham to identify several inmates who were willing to speak at an upcoming hearing on the closure.

Shop foreman Decker testified that Graham had the inmates sign a piece of paper that appeared to be a petition. He conceded that the piece of paper that Graham subsequently produced for Sergeant Vasquez was blank apart from inmate signatures, but stated that the original paper may have been different because it appeared to have paragraphs of writing on it in addition to the signatures. Decker testified that when he urged the inmates to work, Graham "would go around behind me and start talking to 'em and they just quit and sit [*sic* ] down." Correction Officer Ciaschi also testified that Graham appeared to be asking the inmates to sign a piece of paper with what appeared to be paragraphs on it, and that there appeared to be a work slowdown. General foreman Gabak testified that inmates were talking and not working where Graham was located. Sergeant Vasquez testified that Decker had called him to the floor because Graham was causing a work slowdown. He stated that Graham denied circulating a petition and produced a piece of paper with only inmate signatures on it.

Relying on the two misbehavior reports and witness testimony, Lieutenant Mahunik found Graham guilty of urging a work slowdown and sentenced him to 180 days confinement in the Special Housing Unit and loss of privileges.

Prior to the foregoing July 7th incident, in June 1989, Graham filed an Article 78 proceeding in New York state court to prohibit removal of showers in the workshop. In September, the proceeding was dismissed as moot because Graham had been sent to a Special Housing Unit and was therefore no longer affected by the intended shower removal.

On July 14, 1989, Graham administratively appealed Lieutenant Mahunik's decision, claiming that it lacked substantial evidence. On September 8, the decision was administratively affirmed.

In June 1990, Graham filed the complaint in this case in district court. Magistrate Judge DiBianco repeatedly denied Graham's motions for appointment of counsel. From 1991 to 1992, Graham served interrogatories. In June 1993, the defendants moved for summary judgment. The defendants also claimed that Graham had failed to state a claim against Henderson, Walker, and Anthony because they were not personally involved in the events of July 7 or the subsequent hearing, or, in the alternative, because they were entitled to qualified immunity. (Graham subsequently dismissed his complaint against Henderson, Walker, and Anthony.) The defendants further claimed that

Graham should be denied relief under 42 U.S.C. § 1983 because he had been afforded due process: receiving notice of, and opportunity to be heard at, the disciplinary hearing and obtaining a decision based on evidence. In his reply, Graham disputed that the inmates stopped working after signing his paper and claimed that receiving a hearing in accord with due process is not relevant to a § 1983 retaliation claim.

In November 1994, Chief Judge McAvoy of the Northern District of New York transferred the case to Judge Baer to dispose of the pretrial motions. On June 14, 1995, the district court granted the defendants' motion for summary judgment, denied Graham's cross-motion, and dismissed the complaint. *Graham v. Henderson,* No. 90 Civ. 692(HB), slip op. at 5 (N.D.N.Y.).

Graham appeals.

## II. DISCUSSION

### A. *Summary Judgment*

■ We review a grant of summary judgment de novo. *Lowrance v. Achtyl,* 20 F.3d 529, 534 (2d Cir.1994). Under Federal Rule of Civil Procedure 56(c), summary judgment may be granted only when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). While genuineness runs to whether disputed factual issues can "reasonably be resolved in favor of either party," *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986), materiality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law, *id.* at 248, 106 S.Ct. at 2510. A reasonably disputed, legally essential issue is both genuine and material and must be resolved at trial. *See id.* at 248, 250, 106 S.Ct. at 2510, 2511.

■ The evidence of the party opposing summary judgment is "to be believed, and all justifiable inferences are to be drawn in [that party's] favor." *Id.* at 255, 106 S.Ct. at 2513. Moreover, the pleadings of a *pro se* plaintiff must be read liberally and should be interpreted "to raise the strongest arguments that they suggest." *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994).

### B. *Section 1983 Claim*

Section 1983 of Title 42 of the United States Code establishes liability for deprivation under the color of state law "of any rights, privileges, or immunities secured by the Constitution."

Graham alleges that Decker and Ciaschi filed false misbehavior reports against him in retaliation for his leadership in filing a grievance to protest the removal of the workshop showers. In *Mount Healthy Sch. Dist. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471(1977), the Supreme Court established the standard for a § 1983 claim that the state actor retaliated against a plaintiff for exercising a constitutional right. The plaintiff bears the burden of showing that the conduct at issue was constitutionally protected and that the protected conduct was a substantial or motivating factor in the prison officials' decision to discipline the plaintiff. *Id.* If the plaintiff carries that burden, the defendants must show by a preponderance of the evidence that they would have disciplined the plaintiff "even in the absence of the protected conduct." *Id.* Thus, if taken for both proper and improper reasons, state action may be upheld if the action would have been taken based on the proper reasons alone. *Lowrance,* 20 F.3d at 535 (citing *Mount Healthy,* 429 U.S. at 287, 97 S.Ct. at 576; *Sher v. Coughlin,* 739 F.2d 77, 82 (2d Cir.1984)) (affirming summary judgment dismissal of prisoner's § 1983 retaliation claim).

■ A finding of sufficient permissible reasons to justify state action is "readily drawn in the context of prison administration where we have been cautioned to recognize that prison officials have broad administrative and discretionary authority." *Lowrance,* 20 F.3d at 535 (quotation marks omitted). Retaliation claims by prisoners are "prone to abuse" since prisoners can claim retaliation for every decision they dislike. *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983). A complaint of retaliation that is "wholly conclusory" can be dismissed on the pleadings alone. *Id.*

In short, Graham's claim will not survive summary judgment under the *Mount Healthy* test if he does not meet the burden of demonstrating two genuine issues of material fact: (1) that the disciplined conduct was constitutionally protected, and (2) that his punishment was motivated, in whole or in part, by his conduct—in other words, that the prison officials' actions were substantially improper retaliation. Assuming Graham meets his burden, his claim will still not survive summary judgment under *Mount Healthy* if the defendants meet their burden of showing that there is no genuine issue as to the fact that Graham would have received the same punishment even if they had not been improperly motivated.

Graham meets the first prong of his burden, showing a triable issue of constitutionally protected conduct. His claimed conduct—namely, his filing of a grievance and attempt to find inmates to represent the grievants—is constitutionally protected. This court has held that retaliation against a prisoner for pursuing a grievance violates the right to petition government for the redress of grievances guaranteed by the First and Fourteenth Amendments and is actionable under § 1983. *Franco v. Kelly*, 854 F.2d 584 (2d Cir.1988) (prisoner alleged that false disciplinary charges were issued in retaliation for his cooperation with an investigation into inmate abuse). "[I]ntentional obstruction of a prisoner's right to seek redress of grievances 'is precisely the sort of oppression that ... section 1983[is] intended to remedy.'" *Id.* at 589 (alterations in original)(quoting *Morello v. James*, 810 F.2d 344, 347 (2d Cir.1987)). The right to petition government for redress of grievances—in both judicial *and* administrative forums—is "'among the most precious of the liberties safeguarded by the Bill of Rights.'" *Id.* (quoting *United Mine Workers v. Illinois State Bar Ass'n*, 389 U.S. 217, 222, 88 S.Ct. 353, 356, 19 L.Ed.2d 426 (1967)). Graham's claimed conduct clearly is a protected right of redress under the First and Fourteenth Amendments.

Because of its central importance, this right is "substantive rather than procedural and therefore cannot be obstructed, regardless of the procedural means applied." *Id.* at 589 (quotation marks omitted). In holding that Graham did not suffer the violation of a constitutionally protected right, the district court improperly relied on the due process protections accorded to Graham in his disciplinary hearing. Slip op. at 4. The district court cites *Superintendent, Massachusetts Correctional Institution v. Hill*, 472 U.S. 445, 455, 105 S.Ct. 2768, 2773, 86 L.Ed.2d 356 (1985) for the proposition that a prisoner's due process rights are satisfied if the inmate is given notice, opportunity to be heard, and a decision based on some evidence. Slip op. at 4. But *Hill* was not so sweeping; it only concerned *procedural* due process. *Hill* did not involve retaliation for protected conduct, so it lacks a component of substantive due process. The issue in *Hill* was merely whether there was, and whether there needed to be, some evidence to support a prison disciplinary decision. The issue here is whether the disciplinary decision was improperly motivated.

While Graham's conduct as he depicts it is constitutionally protected, his conduct as presented by the defendants is not: Graham has no constitutional right to organize a prison work slowdown.[1] Graham succeeds in creating a genuine issue of fact over whether he was, as he claims, collecting names of possible representatives in the grievance process, or, as the defendants argue, circulating a petition and organizing a work slowdown. He claims that there was not a work slowdown and that, on the day he was collecting names, there simply was not work to be done on July 7th. These claims are corroborated by the testimony of the seven other inmates. Moreover, a search of Graham's possessions did not produce a petition. Instead, Graham

---

1. Graham does have a constitutional right to circulate a petition, but Graham denies that he was circulating a petition. The defendants claim that he was. They do not contend that the petition by itself was punishable conduct but obliquely suggest that it was used to facilitate a work slowdown, which, as noted above, is punishable conduct under prison rule 104.12. *See* Brief, at 4–7. The district court incorrectly states that Graham claims he was circulating a petition. Slip op. at 1, 3.

turned over to prison officials a piece of paper that fits his description of what he was doing on July 7th—a mere list of names and identification information, not a petition.

Graham meets the second prong of his burden to survive summary judgment, showing a genuine issue of material fact that the protected conduct was a substantial or motivating factor in his discipline. Graham's claim of retaliation is not conclusory. If true, the facts as Graham alleges—namely, that there was no work to be done on July 7th and that he was collecting a list of names of possible representatives in the grievance process—give rise to an inference that the defendants disciplined Graham in retaliation against him for his leadership in opposing the closure of the showers.

The defendants argue that this inference is unreasonable because they had no possible motive for wishing to retaliate against Graham and not other inmates opposing the closure. Graham was not the only inmate who protested the proposed elimination of the showers. The defendants point out, for example, that Graham was one of only seventeen inmates who filed grievances. But Graham played a unique role in two respects. He was the only inmate who was collecting signatures. And, previously, in June, he (and no other inmates) filed an Article 78 proceeding in state court. It cannot be said that as a matter of law this unique role cannot provide a motive for retaliation; Graham succeeds in raising an issue of material fact whether the defendants perceived Graham as a leader in protesting the removal of the showers and thus had a motive to single him out for retaliation.

This question of material fact is a genuine issue for trial because Graham's version of events is corroborated by the testimony of seven other inmates and by the fact that while Graham was able to produce a piece of paper with a list of inmate names, prison officials after a search could not produce the petition they say Graham was circulating. The district court thus incorrectly concluded that there was not "one scintilla of evidence suggesting that the charges were false or that they were levelled in retaliation for Graham's grievance." Slip op. at 3.

Graham meets his burden under the *Mount Healthy* test. If, however, the defendants meet their burden—showing that Graham would have been disciplined even in the absence of the protected conduct—summary judgment dismissing Graham's § 1983 claim would be appropriate. They do not.

Graham's version of events would be insufficient as a matter of law even if true (even if the defendants were retaliating against protected conduct) if there were proper, non-retaliatory reasons for his punishment. Once the burden shifts to the defendants, Graham's presentation creates a triable issue of fact unless the defendants proffer an alternative basis for disciplining Graham that would apply to him even if his version of events were true. The defendants make no such allegation; the *only* reason they offer for Graham's punishment is the alleged work slowdown.

Consequently, based on the current record, Graham's punishment was either wholly retaliatory or it was not retaliatory at all. The defendants either perceived that Graham was circulating a petition leading to a work slowdown or they perceived that Graham was a leader in protesting the elimination of the showers and disciplined him in retaliation for protected conduct. This question runs to matters of credibility and weight of the evidence, which are matters for the jury and should not be decided on summary judgment, *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513.

Accordingly, Graham's § 1983 complaint should not have been dismissed as a matter of law.

## C. Section 1985 and 1986

The district court properly granted summary judgment dismissing Graham's claims under 42 U.S.C. §§ 1985(3) and 1986. Section 1985(3) provides:

If two or more persons in any State or Territory conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; ... if one or more persons ... do, or cause to be done, any act in furtherance of the

object of such conspiracy, whereby another is ... deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages....

 The conspiracy must be motivated by racial or related class-based discriminatory animus. *United Bhd. of Carpenters, Local 610 v. Scott,* 463 U.S. 825, 835–37, 103 S.Ct. 3352, 3359–61, 77 L.Ed.2d 1049 (1983); *Mian v. Donaldson, Lufkin & Jenrette Secs. Corp.,* 7 F.3d 1085, 1088 (2d Cir.1993). Graham fails to show such animus.

Graham contends that the defendants discriminated against him because of his leadership role in protesting the change in work conditions. This is an insufficient basis for a § 1985(3) claim. The Supreme Court has explicitly declined to extend § 1985(3) to reach conspiracies based on economic or commercial views, status, or activities. *Scott,* 463 U.S. at 837–39, 103 S.Ct. at 3360–62 (beating of non-union employees does not constitute class-based animus under § 1985(3)).

Graham also charges racial discrimination, claiming that while Decker reprimanded Henn, who is white, for a work slowdown, he wrote a misbehavior report only about Graham, who is African–American. Reply Brief at 8. For the reasons that the § 1983 claim survives summary judgment, this second § 1985 claim fails: Graham had a leadership role that Henn did not, leaving Graham's racial discrimination claim conclusory in the absence of other evidence. Moreover, Graham raises racial discrimination in his reply brief, but not in his opening brief. Consequently, we need not consider the argument. *See Knipe v. Skinner,* 999 F.2d 708, 710–11 (2d Cir.1993).

 Section 1986 imposes liability on an individual who has knowledge of discrimination prohibited under § 1985. Hence, a § 1986 claim is contingent on a valid § 1985 claim. *Mian,* 7 F.3d at 1088. Since Graham does not have a valid § 1985 claim, he does not a valid § 1986 claim either. The district court properly dismissed both claims.

## III.  CONCLUSION

For the foregoing reasons, we vacate the district court's grant of summary judgment dismissing the § 1983 claim and remand for appropriate proceedings. We affirm the grant of summary judgment dismissing the § 1985 and § 1986 claims.