193 F.3d 144 (2nd Cir. 1999)
 RONALD DAVIDSON, Plaintiff-Appellee-Cross-Appellant,
v.
MELVIN L. CHESTNUT, VALERIE SMITH, BYRON GOODE, and ECLIFFE GOVIA, Officer, Defendants-Appellants-Cross-Appellees,
RICK M. REISH, ALAN STEIFEL, CARL VITANZA, THOMAS BOULDIN, BILL URBANO, RAJEESH PATEL, JAMIE ZAYAS, FRANKLIN OLMO, DANIEL MURRAY, JOSEPH MORALES, JAMES LAWRENCE, CURTIS COLE, KENNETH WASHINGTON, JAMES COURTNEY, NICHOLAS DE FONTE, CLARK MARQUEZ, ESTABAN ROMAN, JOHN FEELY, CARLOS QUIROZ, DOMINIQUE RAIA, JOHN DOE 1, and JOHN DOES 2-10, in their individual and official capacities, and OLIVER BROWN, in his individual capacity, Defendants-Cross-Appellees.
 Docket Nos. 98-2853(L), 98-2897(XAP)
August Term, 1998
 UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
 Submitted: July 14, 1999
Decided: September 29, 1999
 
 Interlocutory appeal from the decision of the United States District Court for the Southern District of New York (Lawrence M. McKenna, Judge) granting in part and denying in part defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56. See Davidson v. Chestnut, No. 96 Civ. 1228, (S.D.N.Y. July 28, 1998). Defendants argue on appeal that the District Court failed to consider whether qualified immunity shielded them from suit on plaintiff's remaining retaliation claims on the grounds that they would have taken the same actions absent the alleged retaliatory motive.
 Vacated and remanded.
 Ronald Davidson, pro se (Eric L. Aaronson, Paul C. Llewellyn, Kaye, Scholer, Fierman, Hays & Handler, LLP, on the brief), Plaintiff-Appellee-Cross-Appellant.
 Heidi A. Wendel, Assistant United States Attorney for the Southern District of New York (Mary Jo White, United States Attorney, Gideon A. Schor, Assistant United States Attorney, of counsel), for Defendants-Appellants-Cross-Appellees.
 Before: WALKER, CABRANES and SACK, Circuit Judges.
 PER CURIAM:
 
 
 1
 The question presented here is whether employees of the Bureau of Prisons are shielded by qualified immunity from suit on a First Amendment retaliation claim, brought pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), on the grounds that they would have taken the challenged actions even absent a retaliatory motive.
 
 
 2
 Defendants Melvin L. Chestnut, Valerie Smith, Byron Goode, and Ecliffe Govia appeal from that portion of the July 28, 1998 order of the United States District Court for the Southern District of New York (Lawrence M. McKenna, Judge) denying in part their motion for summary judgment pursuant to Fed. R. Civ. P. 56. See Davidson v. Chestnut, No. 96 Civ. 1228, 1998 WL 436527 (S.D.N.Y. July 28, 1998). The District Court denied defendants' motion with respect to plaintiff Ronald Davidson's First Amendment claims for retaliatory denial by Chestnut, Goode, and Govia of a kosher diet, and retaliatory denial by Smith of the opportunity to exercise. On appeal, defendants argue that they were shielded by qualified immbg vcjunity from suit on those claims. Specifically, defendants contend that, because they would have taken the same actions absent any retaliatory motive, they did not violate Davidson's clearly established rights. Plaintiff cross-appeals from that portion of the District Court's decision granting defendants' motion for summary judgment with respect to his Eighth Amendment claims based on denial of a kosher diet and prescribed medication.[1] Further, Davidson argues that the District Court dismissed his claims prematurely without allowing him an opportunity to engage in discovery. We vacate the District Court's order denying summary judgment to Chestnut, Goode, Govia, and Smith on Davidson's claims for retaliatory denial of a kosher diet and the opportunity to exercise, and we remand for reconsideration of defendants' motion for summary judgment on those claims. We conclude that we do not have pendent appellate jurisdiction over Davidson's cross-appeal, which we therefore dismiss.
 
 I.
 
 3
 Davidson's claims arise out of a five-day period of incarceration at the Metropolitan Correctional Center ("MCC") in 1995. Davidson, a convicted murderer serving a sentence of 25 years to life in the custody of New York State, was placed at the MCC from July 3 to July 8, 1995, pursuant to a writ of habeas corpus ad testificandum ("writ") signed by United States District Judge Peter K. Leisure, to allow Davidson to testify in another of his lawsuits pending in the Southern District of New York. Davidson claims that, in the space of five days, Chestnut, Goode, Govia, Smith, and thirty-one other defendants repeatedly violated his rights. He brought the instant action on February 21, 1996.
 
 
 4
 In his second amended complaint, filed on October 27, 1997, Davidson alleged that defendants violated his First and Eighth Amendment rights (1) by denying him a kosher diet, failing to refill his prescription for medication, denying him an opportunity to exercise, and denying him meaningful court access; and (2) by taking these actions, and placing him in solitary confinement, in retaliation for filing an earlier lawsuit against a former MCC employee. Davidson also alleged that defendants violated the particular terms of the writ signed by Judge Leisure, and he alleged that the failure to provide him with a kosher diet violated the Religious Freedom Restoration Act of 1993, 42 U.S.C. § 2000bb et seq.
 
 
 5
 Defendants filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment pursuant to Fed. R. Civ. P. 56. Davidson cross-moved for summary judgment with respect to his claim for violation of the terms of the writ. Both sides submitted affidavits and relied on other materials outside the pleadings, and Judge McKenna elected, pursuant to Rule 12(b), to accept these materials and treat defendants' motion as one for summary judgment. See Davidson, 1998 WL 436527, at *1. On July 28, 1998, Judge McKenna granted defendants' motion for summary judgment as to all claims and as to all defendants, except for the claims asserted against Chestnut, Goode, and Govia for retaliatory denial of a kosher diet and for the claim asserted against Smith for retaliatory denial of the opportunity to exercise. Id. at *2-11. He reserved decision on Davidson's claim of violation of the writ pending contact with Judge Leisure, who had issued the writ, to determine whether Judge Leisure wished to decide the issue. Id. at *8, 11. This appeal, and cross-appeal, followed.[2]
 
 II.
 
 6
 On appeal, defendants Chestnut, Smith, Goode, and Govia argue that they are shielded from suit by qualified immunity because their actions did not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Specifically, defendants argue that, because the challenged actions would have been taken absent a retaliatory motive, they did not violate Davidson's First Amendment rights. See Siegert v. Gilley, 500 U.S. 226, 232 (1991) ("A necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is 'clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all.").
 
 A. Appellate Jurisdiction
 
 7
 Although a district court's denial of a motion for summary judgment is generally a non-appealable interlocutory order, a "limited exception is available for decisions rejecting a defense of qualified immunity," to the extent that the district court's decision turns on an issue of law other than the legal determination that the evidence is insufficient to permit a particular finding as to a material fact. Catone v. Spielmann, 149 F.3d 156, 159-60 (2d Cir. 1998) (citing Johnson v. Jones, 515 U.S. 304, 313-14 (1995)). In the instant appeal, defendants argue that the District Court did not apply the correct legal standard in deciding whether summary judgment was warranted. Accordingly, we may properly exercise jurisdiction at least over that portion of defendants' appeal.
 
 B. Retaliatory Denial of a Kosher Diet
 
 8
 We set forth, and adopt for the limited purpose of evaluating the entry of summary judgment, the following allegations of fact, largely drawn from Davidson's second amended complaint. When Davidson arrived at the MCC on July 3, 1995, he requested a kosher diet on both an Acknowledgments of Inmate form and a medical history report. That same day, Davidson showed Chestnut (then an Operations Lieutenant) and two other defendants a copy of the writ signed by Judge Leisure, containing the instruction that he "be provided with a kosher diet while in transit to and from the Metropolitan Correctional Center, New York, New York and while in the custody of the Metropolitan Correctional Center," and informed them that he wished to have kosher meals while at the MCC. Davidson claims to have repeatedly requested a kosher diet, both orally and in writing, from July 3 to July 8.
 
 
 9
 When Davidson requested a kosher diet, Chestnut allegedly "laughed and replied, 'You ain't getting [expletive].'" Defendants Goode, a Correctional Counselor, and Govia, a Correctional Officer, upon being asked by Davidson on separate occasions for a kosher diet, purportedly told Davidson that they knew of his lawsuit against a former MCC employee and that he would "have a hard time" whenever he was at the MCC. According to Davidson, he received only one kosher meal, which was given to him on the night of his arrival by a non-party MCC employee.[3]
 
 
 10
 Bureau of Prisons ("BOP") policy provides that inmates requesting a religious diet must submit an application to the prison chaplain, who is responsible for approving requests for special religious diets, or, in BOP parlance, the "common fare diet program." See Federal Bureau of Prisons Operations Memorandum 051-95 (Apr. 6, 1995). An "inmate shall ordinarily begin eating from the common fare menu within two days after Food Service receives written authorization from the Chaplain." See id. at 3.
 
 
 11
 On July 3, Davidson completed a Religious Preference Survey on which he indicated his desire for a kosher diet. The chaplain was not at work on July 4 because it was a holiday, and he did not see the request until July 5. The chaplain claims that, on July 5, he attempted to meet with Davidson but was unable to do so because of Davidson's court appearance. According to the chaplain, he could not approve the request for a kosher diet until Davidson completed the specific application form required by the BOP policy. See id. at 3 & Attach. B (application form). The chaplain met with Davidson early on July 6, 1995, Davidson completed the application, and the chaplain gave his approval. Accordingly, under BOP procedure, Davidson would have begun eating from the "common fare menu" on July 8, the day he left the MCC.
 
 
 12
 Chestnut, Goode, and Govia flatly deny having made the statements attributed to them, and Chestnut denies that he ever saw the writ and asserts that he was not aware that the writ provided that Davidson was to receive a kosher diet.
 
 
 13
 Judge McKenna granted summary judgment on the claim for retaliatory denial of a kosher diet with respect to all defendants other than Chestnut, Goode, and Govia because Davidson had presented no evidence that they harbored a retaliatory motive. However, he noted that the statements attributed to Chestnut, Govia, and Goode created a genuine issue as to those defendants' motives in denying Davidson's request for kosher meals. See Davidson, 1998 WL 436527, at *8. Judge McKenna held that this factual dispute as to the motives of Chestnut, Goode, and Govia precluded summary judgment with respect to those defendants. Id.
 
 
 14
 On appeal, the government argues that the District Court, in evaluating whether summary judgment was warranted, erred by failing to consider whether defendants Chestnut, Goode, and Govia would have taken the same actions absent the alleged retaliatory motive. In a claim for retaliation for the exercise of a constitutional right, the plaintiff "bears the burden of showing that the conduct at issue was constitutionally protected and that the protected conduct was a substantial or motivating factor in the prison officials' [actions]." Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996). If the plaintiff satisfies that burden, the burden shifts to the defendants to show that they would have taken the action even in the absence of the plaintiff's protected conduct-that is,"even if they had not been improperly motivated." Id. at 80. At the summary judgment stage, if the undisputed facts demonstrate that the challenged action clearly would have been taken on a valid basis alone, defendants should prevail.
 
 
 15
 In the instant case, defendants argue that, even assuming plaintiff's earlier lawsuit was a motivating factor in their decision to deny him a kosher diet, there was also a legitimate motive-namely, the BOP policy-that would have caused them to deny Davidson a kosher diet absent the retaliatory motive. Because it is unclear whether the District Court considered this argument, we vacate the order of the District Court denying summary judgment with respect to Davidson's First Amendment claim against Chestnut, Goode, and Govia for retaliatory denial of a kosher diet, and we remand to the District Court for reconsideration.
 
 
 16
 C. Retaliatory Denial of Opportunity to Exercise
 
 
 17
 According to Davidson's complaint, he requested an opportunity to exercise every day from July 4 to July 8, 1995, but he was only given an hour of exercise on July 7. On July 4, 1995, when Davidson asked defendant Smith for permission to exercise, Smith assertedly told him: "[E]veryone knows about your lawsuit against Rich [Davis]. And I'm going to remind them of it." Smith allegedly also told Davidson that he was "to get [expletive] across the board." Smith denies making these statements. Although Davidson assertedly asked to exercise on many occasions throughout his stay at the MCC, he only alleges that he asked Smith on July 4 and July 7, when he was permitted an hour of exercise. Defendants contend that Davidson was denied exercise on July 3 and July 8 because he was in transit to and from the MCC on those days, on July 4 because it was a holiday, and on July 5 because he was in court at least half the day.
 
 
 18
 Judge McKenna held that, in general, "Davidson has not come forward with any evidence which suggests that defendants' actions [in denying him exercise] were related to his filing a lawsuit against a former Lieutenant at the MCC...." See Davidson, 1998 WL 436527, at *3. The only exception was Smith, whose alleged statements to Davidson could have demonstrated a retaliatory motive. As with the claim of retaliatory denial of a kosher diet, Judge McKenna denied summary judgment because, in his view, a material question of fact remained as to whether Smith acted with a retaliatory motive. See id.
 
 
 19
 Once again, it is not clear that Judge McKenna considered whether Smith would have denied Davidson exercise absent her alleged retaliatory motive. Accordingly, we vacate that portion of the District Court's order denying summary judgment as to the claim against Smith for retaliatory denial of the opportunity to exercise, and we remand for reconsideration.
 
 D. Necessity of Remand for Reconsideration
 
 20
 The parties on both sides of this appeal urge that, even if the District Court failed to consider whether the actions at issue would have been taken absent any retaliatory motive, we should simply reach the issue ourselves, rather than vacating and remanding for reconsideration.
 
 
 21
 On the one hand, defendants would have us reverse the District Court's decision, and direct the entry of summary judgment in their favor, as to the claims raised in their appeal. We have repeatedly stated that "the conclusion that the ... action would have been taken in the absence of improper motives is readily drawn in the context of prison administration[,] where we have been cautioned to recognize that prison officials have broad administrative and discretionary authority over the institutions they manage." Lowrance v. Achtyl, 20 F.3d 529, 535 (2d Cir. 1994) (internal quotation marks omitted); accord Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996); Sher v. Coughlin, 739 F.2d 77, 82 (2d Cir. 1984). Pointing to this standard and to the evidence discussed above, defendants argue that there is no genuine dispute as to whether, even apart from any improper motive, they would have taken the actions at issue.
 
 
 22
 On the other hand, Davidson agrees that remand is not required, but he maintains that we should affirm the denial of summary judgment. Relying on the text of the writ issued by Judge Leisure and the undisputed fact that he (Davidson) actually was given one kosher meal by a non-party MCC employee, he argues that it is at least unclear whether, absent a retaliatory motive, the availability of kosher meals would have depended on strict adherence to the BOP policy. Similarly, Davidson reiterates his assertion that other prisoners were allowed to exercise on July 4, and he argues that, but for Smith's alleged retaliatory motive, an opportunity to exercise might have been granted despite the fact of the holiday. In sum, Davidson maintains that, under the correct legal standard, there are indeed genuine issues of material fact precluding summary judgment.
 
 
 23
 Although the evidence on these questions of causation might be so one-sided as to foreclose any genuine dispute (thereby permitting entry of judgment as a matter of law), we will not decide matters of "evidence sufficiency" on an interlocutory appeal, even if the underlying order is immediately appealable on other grounds. See Johnson, 515 U.S. at 318-19. As a result, we have chosen to remand the case to the District Court for consideration, in the first instance, of the argument that defendants indisputably would have taken the same actions even absent any retaliatory motive.
 
 
 24
 We also note the existence of an additional issue, one which has been addressed by neither side, but which nevertheless is appropriate for consideration by the District Court on remand. Specifically, there is a serious question as to whether the alleged acts of retaliation, especially Smith's asserted one-day denial of an opportunity to exercise, were more than de minimis. See Thaddeus-X v. Blatter, 175 F.3d 378, 397 (6th Cir. 1999) (holding that, to be actionable, retaliation against a prisoner must be likely to "chill a person of ordinary firmness from continuing to engage" in activity protected by the First Amendment); Crawford-El v. Britton, 93 F.3d 813, 826 (D.C. Cir. 1996) (en banc) (approving similar standard on the ground that "some non-de minimis showing of injury is necessary"), vacated on other grounds, 523 U.S. 574 (1998); see also ACLU of Md. v. Wicomico County, 999 F.2d 780, 786 & n.6 (4th Cir. 1993) (holding that termination of ACLU paralegal's privileges to visit with inmates resulted in "no more than a de minimis inconvenience and that, on the facts of th[at] case, such inconvenience d[id] not constitute cognizable retaliation under the First Amendment"); Bart v. Telford, 677 F.2d 622, 625 (7th Cir. 1982) ("[S]ince there is no justification for harassing people for exercising their constitutional rights[, harassment] need not be great in order to be actionable. Yet ... [i]t would trivialize the First Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise....") But cf. Rutan v. Republican Party of Ill., 497 U.S. 62, 76 n.8 (1990) (stating in dicta that the First Amendment protects public employees against "even an act of retaliation as trivial as failing to hold a birthday party for a public employee when intended to punish her for exercising her free speech rights") (internal quotation marks and ellipses omitted), discussed in Thaddeus-X, 175 F.3d at 398.
 
 
 25
 Like the question of causation, this issue is factual in nature. See, e.g., Thaddeus-X, 175 F.3d at 398-99 (stating that "the question is whether there is a genuine issue of material fact regarding the deterrent effect of the claimed [retaliation]"); Bart, 677 F.2d at 625 ("It is a question of fact whether the [alleged retaliation] reached the threshold of actionability...."). We therefore will address it, if squarely presented to us, only after entry of a final judgment by the District Court.
 
 E. Pendent Appellate Jurisdiction
 
 26
 Finally, Davidson asks us to exercise pendent appellate jurisdiction over his cross-appeal of Judge McKenna's summary judgment in favor of the other defendants. In the course of reviewing an immediately appealable interlocutory ruling, we may review a related ruling that is unappealable in its own right if, and only if, "the otherwise unappealable issue is inextricably intertwined with the appealable one, or . . . review of the otherwise unappealable issue is necessary to ensure meaningful review of the appealable one." Merritt v. Shuttle, Inc., 187 F.3d 263, 268-69, (2d Cir. July 20, 1999) (internal quotation marks omitted); accord Rein v. Socialist People's Libyan Arab Jamahiriya, 162 F.3d 748, 758 (2d Cir. 1998); see also Swint v. Chambers County Comm'n, 514 U.S. 35, 50-51 (1995) (suggesting that pendent appellate jurisdiction, if available at all, is limited to these two circumstances).
 
 
 27
 Davidson argues in his cross-appeal that, in light of the text of the writ signed by Judge Leisure, the deprivation of a kosher diet and prescribed medications (quite apart from any retaliatory motive) violated a clearly established right and that, therefore, defendants were not shielded by qualified immunity. Further, Davidson argues that the District Court dismissed most of his claims prematurely, before he had an opportunity to engage in discovery. None of these issues overlaps with the issues raised by the defendants' appeal, which involves defendants' qualified immunity defense to Davidson's First Amendment retaliation claims. Further, resolution of the issues Davidson raises on his cross-appeal are not necessary to resolution of the issues on defendants' appeal. Accordingly, pendent appellate jurisdiction is not available for Davidson's cross-appeal.
 
 III. CONCLUSION
 In sum:
 
 28
 (1) we vacate that portion of the District Court's July 28, 1998 order denying defendants' motion for summary judgment with respect to Davidson's claims against Chestnut, Goode, and Govia for retaliatory denial of a kosher diet and against Smith for retaliatory denial of exercise;
 
 
 29
 (2) we remand for reconsideration of defendants' motion as to those claims; and
 
 
 30
 (3) we dismiss Davidson's cross-appeal for lack of pendent appellate jurisdiction.
 
 
 
 Notes:
 
 
 [1]
 After filing his cross-appeal, Davidson retained as counsel Eric L. Aaronson and Paul C. Llewellyn of Kaye, Scholer, Fierman, Hays & Handler LLP. After counsel filed a thorough brief on Davidson's behalf, Davidson moved to relieve counsel and proceed pro se. We granted that motion, but we denied Davidson's subsequent motion for appointment of new counsel by the Court.
 
 
 [2]
 Defendants' notice of appeal was filed more than thirty days, but fewer than sixty days, after entry of the District Court's order. In a civil case, "[w]hen the United States or its officer or agency is a party, the notice of appeal may be filed by any party within 60 days after the judgment or order appealed from is entered." Fed. R. App. P. 4(a)(1)(B). Davidson does not dispute that at least some defendants are being sued for actions taken in the scope of their employment as-and, indeed, are named in their legal capacity as-officers of the United States. Accordingly, defendants' notice of appeal was timely filed.
 
 
 [3]
 Davidson claims that when he later asked another employee to heat the meal in a microwave oven, the meal was never returned.