**Lenard BERRIAN, on behalf of similarly situated,**
**Plaintiff,**

v.

**Governor George PATAKI, of New York State, and Chairman Robert Dennison, of New York State Division of Parole, Defendants.**

No. 06 Civ. 11350(DC).

United States District Court, S.D. New York.

Sept. 26, 2007.

Lenard Berrian, Malone, NY, Plaintiff Pro Se.

Andrew M. Cuomo, Attorney General of the State of New York, by Jennifer L. Johnson, Esq., Neil Shevlin, Esq., Assistant Attorneys General, New York, NY, for Defendants.

## *MEMORANDUM DECISION*

CHIN, District Judge.

Lenard Berrian, a *pro se* plaintiff currently incarcerated in the New York State prison system, contends that the former New York State Governor and the former Chairman of the New York State Division of Parole have conspired to abolish parole for New York State prisoners, himself included. Berrian alleges that former Governor George Pataki and former chairman Robert Dennison, through "administrative fiat," have transformed the legal, indeterminate sentences handed down by New York State courts into illegal, determinate sentences, in violation of his constitutional

rights, and those of all New York State prisoners similarly situated.

Berrian requests compensatory and punitive damages. Additionally, on behalf of himself and all similarly situated inmates, Berrian seeks a declaratory judgment that the New York State Division of Parole (the "Parole Division") contributed to the abolition of parole in New York, and an injunction reducing or eliminating the four-month response time allotted to the Parole Division's Appeals Unit ("PAU").

Defendants move to dismiss the complaint. Berrian lacks standing to bring this action, and accordingly, and for the reasons set forth below, the complaint is dismissed.

## BACKGROUND

### A. The Facts

For purposes of this motion to dismiss, the facts as alleged in Berrian's complaint are assumed to be true.

### 1. Underlying Conviction

In 1996 Berrian was convicted of selling narcotics in New York Supreme Court, New York County, and sentenced to an indeterminate minimum term of six and maximum term of twelve years of imprisonment. (Compl.¶ 1). *See* N.Y. Penal Law § 70.00 (McKinney 2006) (court imposes maximum sentence term, while statute provides minimum term).

Berrian formerly was incarcerated at the Elmira Meadow Correctional Facility ("Elmira"), and is now incarcerated at the Upstate Correctional Facility. (Compl.¶ 1).

### 2. 2002 Parole Denial

Berrian first appeared before the Board of Parole (the "Board") in September 2002, and presented evidence of his institutional programming and positive accomplishments. (*Id.* ¶ 2 & Exs. B, M, N). An Inmate Status Report ("ISR") prepared for the Board's review, however, stated that Berrian was under parole supervision when he committed the instant offense. (*Id.* ¶ 3). Berrian contends this was untrue. (*Id.*).

The Board denied Berrian parole, based on the following factors: his "criminal demeanor," "poor institutional behavior," and "serious disciplinary record" at Elmira, along with his "criminal history record," "failures under community supervision," and "escalation of criminal history." (*Id.* Ex. D). The Board concluded that these factors "militate[d] against [Berrian's] release to community living," and recommended that he "maintain a satisfactory disciplinary record and complete staff recommended programming" in anticipation of his next appearance before the Board. (*Id.*). The Board scheduled Berrian's next appearance for one year later, in September 2003. (*Id.*).

With the assistance of counsel, Berrian appealed the parole denial to PAU, claiming he had been denied parole wrongly because of the inaccurate information contained in the ISR. (*Id.* ¶ 5 & Ex. E). He also contended that one of the disciplinary tickets he had received—cited as evidence of poor institutional behavior by the Board—had been arbitrarily enhanced from a Tier II to a Tier III offense, and that his rehabilitative efforts while incarcerated outweighed his disciplinary record. (*Id.* ¶ 5).

On June 5, 2003, PAU denied Berrian's appeal, affirming the Board's decision below. (*Id.* ¶ 6 & Ex. E). PAU found that the Board's reliance on the "seriousness of the instant offense as well as [Berrian's] extensive criminal history" did "not render the denial of parole for that reason irrational or improper." (*Id.* Ex. E, at 2).

PAU's affirmance of the Board's decision further states as follows: Berrian's "appeal also argues the Board relied upon erroneous information in the[ ] denial of release. To the extent the petitioner complains about the information contained within the pre-sentence report, the Board is not empowered to correct information therein and is entitled to rely on the information contained in the report." (*Id.* (citing N.Y. Exec. Law § 259–a)).

Berrian did not appeal this parole denial pursuant to Article 78 (*see* N.Y. C.P.L.R. § 7801), believing that any appeal process would be rendered moot by his reappearance before the Board in three months. (Compl.¶ 7). In his complaint, Berrian cites two cases in which his unrelated Article 78 petitions purportedly were dismissed as moot under similar circumstances, although neither decision includes any discussion of mootness. (*Id.* (citing *Berrian v. Coughlin,* 222 A.D.2d 990, 635 N.Y.S.2d 778, 778 (3d Dep't 1995) (affirming dismissal of Article 78 petition regarding disciplinary incident); *Berrian v. Goord,* 280 A.D.2d 1011, 720 N.Y.S.2d 76, 76 (4th Dep't 2001) (affirmance of lower court's determination without detail))).

### 3. *2003 Parole Denial*

On September 17, 2003, Berrian was again denied parole, following an interview the previous day. (*Id.* Ex. F). In denying parole, the Board stated as follows:

> This is your third state incarceration with a previous parole revocation. Since your last parole board appearance you have incurred a Tier III disciplinary sanction for urinalysis test/direct order and have been denied an earned eligibility certificate for poor institutional behavior. In your interview, you demon-

strated a[n] extremely hostile behavior, making it difficult to have positive dialogue with the parole board. You are not a good candidate for discretionary release.

(*Id.*). The Board scheduled Berrian's next appearance for September 2005. (*Id.*).

In his complaint, Berrian notes that the Tier III disciplinary sanction for violation of the urinalysis test was ultimately overturned, but not before the 2003 denial of parole. (*Id.* ¶ 8). *See Berrian v. Selsky,* 10 A.D.3d 787, 781 N.Y.S.2d 759, 760 (3d Dep't 2004) (New York Attorney General advised the court that the urinalysis violation had been administratively reversed and expunged from Berrian's record).

Berrian appealed the 2003 parole denial to PAU, citing four issues: (1) the Board did not consider the recommendation of the sentencing court; (2) the 2003 ISR contained erroneous information regarding his parole status at the time of the instant offense; (3) the transcript did not reflect that he engaged in hostile behavior during the parole interview, and therefore the decision to deny parole was predetermined; and (4) the Tier III disciplinary ticket relating to the urinalysis violation was expunged by the time of Berrian's appeal. (Compl. Ex. G, at 2). On April 30, 2004, PAU denied Berrian's appeal, affirming the Board's denial of parole. (*Id.*).[1] In so doing, PAU relied on the following: (1) the Parole Division follows its own "statutory commands and internal policies in fulfilling its obligations," and a prosecutor's recommendation regarding sentence is not binding; (2) neither the decision to deny parole in 2003, nor the 2003 ISR, contained an allegation that Berrian was on parole when arrested for

---

1. Berrian has provided two pages of this decision. The second page seems incomplete, as it begins to discuss the urinalysis violation, but does not provide PAU's reasoning for upholding this aspect of the Board's decision.

the instant offense; and (3) the transcript of the interview reflects that the Board asked Berrian to " 'calm down and talk,' " and that the Board "warn[ed] him against coming in with a chip on his shoulder and attacking" the Board. (*Id.*). The final paragraph of the pages provided to this Court recounts Berrian's complaint about the expunged urinalysis violation; he has not provided a page from PAU supporting the Board's decision on this issue, if one exists. (*Id.*).

Following affirmance of the 2003 denial, Berrian appealed PAU's decision pursuant to Article 78. (*Id.* ¶ 10). Berrian again complained that the urinalysis violation had been reversed, and that the decision was based in part on information, which he claims was false, that he was on parole when he committed the instant offense. (*Id.*). Berrian has provided only pages 3–4 of the New York Supreme Court's April 4, 2005 order denying his Article 78 petition. (*See id.* Ex. H). The pages provided state, *inter alia,* that "[r]eview of the record, including the hearing transcript, reveal that the Board properly considered all of the relevant factors in making its decision" and "sufficiently articulated the basis for its conclusion that release at the present time was not appropriate." (*Id.* at 3). The court also found that the 2003 denial did not reference any incorrect information regarding prior parole status, and that "[t]he argument that petitioner is entitled [to] have a new parole determination because the disciplinary determination which the Board relied on in part was subsequently reversed is also without merit." (*Id.*).

Berrian did not appeal this decision to the Appellate Division, believing that any appeal would be "futile" because he "was again due for another reappearance" before the Board in September 2005. (*Id.* ¶ 11).

#### 4. *2005 Parole Denial*

Berrian was again denied parole in September 2005, "based mainly on disciplinary infractions incurred." (*Id.* ¶ 12).[2] Another appearance was scheduled for September 2006. (*Id.*).

With the assistance of counsel, Berrian appealed the Board's 2005 parole denial to PAU on January 30, 2006. (*Id.* ¶ 13 & Ex. J). PAU did not respond to the appeal within the four month time limit (*id.* ¶ 13), and accordingly the Board's decision became final. *See* N.Y. Comp.Codes R. & Regs. tit. 9, § 8006.4 (2006). At that point Berrian could have filed for Article 78 relief, but chose not to. (Compl.¶ 13).

#### 5. *2006 Parole Denial*

In August 2006 Berrian made his fourth appearance before the Board on the 1996 conviction. (*Id.* ¶ 14). The Board again denied parole. (*Id.* Ex. K). In denying Berrian parole, the Board found as follows:

> Upon a review of the record, personal interview and due deliberation it is the determination of the panel that parole is denied. You are presently incarcerated upon your conviction ... by verdict, which continues a 20 year criminal justice history which includes approximately three felony convictions. Also noted are past failures on community supervision. Your overall institutional performance continues to be less than satisfactory. You have incurred 3 tier II infractions since your last Board appearance.... *All factors considered,* you are a continuing danger to society

**2.** Berrian has provided the ISR from this parole appearance, but not the denial. (*See*

Compl. Ex. I).

and your continued incarceration is, therefore, warranted.

(*Id.*).

Although Berrian filed a notice of appeal that would have permitted him to file an Article 78 petition, Berrian states that he "cho[ ]se not to exercise such option, instead relying on" the action before this Court "challenging [New York] state's corrective process." (*Id.* ¶¶ 16–17). Berrian also "decline[d]" to appeal because his next Board appearance is scheduled for August 2008, only four months shy of his maximum sentence of twelve years. (*Id.* ¶ 18).

## B. *Prior Proceedings*

Berrian filed this complaint on September 27, 2006, pursuant to 42 U.S.C. §§ 1983, 1985, and 1997c, against defendants in their respective "employment capacit[ies]," alleging that Pataki and Dennison "creat[ed] and follow[ed][an] unwritten policy to cause constructive parole denial hearings" for him and other New York state prisoners similarly situated. (*Id.* at 1). Additionally, Berrian contends that a "tolerated custom and existing laws" prevent inmates like him from "fully exhaust[ing] available state court remedies for redress of 'egregious parole denials.'" (*Id.*).

Berrian contends the Board's repeated denials of parole in his case are "abuse[s] of discretion" (*id.*), which cannot be effectively appealed because any particular parole denial is mooted by a reappearance before the Board before an appeal can be completed. (*Id.* at 2). Berrian claims that, for him and all New York state prisoners similarly situated, this

> cycle repeats unended until the prisoner eventually reaches maximum expiration date effectively conveying a[ ] legal indeterminate sentence into an illegal determinate one by way of administrative fiat. This type of blanket protection from

scrutiny is in violation of the Fourteenth Amendment "opportunity to be heard" mandate, the primary cause of action asserted herein.

(*Id.*). Berrian further alleges that this "effective denial" is a deliberate effort on the part of defendants Pataki and Dennison to "abolish parole (for all felons) over legislative sanctioning." (*Id.* ¶ 17 & Ex. P (Pataki's 1999 and 2000 annual addresses proclaiming a desire to end parole for all felons)). Berrian also claims that the resulting "unsanctioned abolishment has le[ ]d to a back log of parole appeals evading scrutiny pursuant [to] the Mootness Doctrine." (*Id.*).

Finally, Berrian attached to his complaint several articles from the *New York Law Journal*, discussing individual cases in which state court judges overturned the decisions of the Board by finding that the Board acted in an arbitrary or irrational manner, and noting Pataki's stated desire to end parole. (*Id.* Ex. P (*Coaxum v. N.Y. State Bd. of Parole*, 14 Misc.3d 661, 827 N.Y.S.2d 489 (N.Y.Sup.Ct.2006) (Board was irrational in its refusal to consider all statutory factors, and abused its discretion in finding that nature of crime alone precluded parole); *Marciano v. Goord*, No. 102892/06 (N.Y.Sup.Ct. Sept. 9, 2006) (Board impermissibly punished petitioner for hypothetical, possible future violent crime, and denied parole); *Chan v. Travis*, No. 3045–02 (N.Y.Sup.Ct. Feb. 21, 2003) (finding denial of parole arbitrary and irrational and remanding to Board for a new hearing, where petitioner had earned high school equivalency and a bachelor's degree and had no disciplinary infractions in over ten years of imprisonment))). Berrian contends that one of these cases, *Chan*, and its subsequent history demonstrate the "defacto custom" used to "pre-empt an appellate ruling by way of Mootness Doctrines." (*Id.* at 10).

In addition to compensatory and punitive damages, Berrian seeks a declaratory judgment that the Parole Division has attempted to abolish parole by denying prisoners access to the courts in appealing denials of parole, and an injunction either shortening, or doing away with entirely, the 120 days PAU currently is afforded to respond to prisoners' appeals of denials of parole. (*Id.* at 11–12).

Defendants move to dismiss the complaint. For the reasons set forth below, the complaint must be dismissed.

## DISCUSSION

■ A *pro se* complaint is reviewed under a more lenient standard than that applied to "formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (per curiam). Accordingly, the Court interprets Berrian's *pro se* pleading " 'to raise the strongest arguments that they suggest.' " *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996) (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)).

### A. *Standard of Review*

In a motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted, the court must accept the factual allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir. 1996); *see Erickson v. Pardus,* —— U.S. ——, 127 S.Ct. 2197, 2199, 167 L.Ed.2d 1081 (2007) (per curiam); *Bell Atl. Corp. v. Twombly,* —— U.S. ——, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007).

■ On a motion to dismiss for failure to state a claim, "a well-pleaded complaint may proceed even if its strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.' " *Bell Atl. Corp.,*

127 S.Ct. at 1965 (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). In its recent holding in *Bell Atlantic Corp.,* however, the Supreme Court announced the "retirement" of the oft-quoted "no set of facts" language from *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), adopting in its place a "plausibility" requirement. *Bell Atl. Corp.,* 127 S.Ct. at 1969. As interpreted by the Second Circuit, *Bell Atlantic Corp.* did not announce a "universal standard of heightened fact pleading, but ... instead requir[es] a flexible 'plausibility standard,' which obligates a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible.*" *Iqbal v. Hasty,* 490 F.3d 143, 157–58 (2d Cir.2007).

■ In any event, "bald contentions, unsupported characterizations, and legal conclusions are not well-pleaded allegations" and will not defeat a motion to dismiss. *Gavish v. Revlon, Inc.,* No. 00 Civ. 7291(SHS), 2004 WL 2210269, at *10 (S.D.N.Y. Sept.30, 2004) (quoting *Citibank, N.A. v. Itochu Int'l, Inc.,* No. 01 Civ. 6007(GBD), 2003 WL 1797847, at *1 (S.D.N.Y. Apr.4, 2003)).

### B. *Standing*

■ The "case or controversy" requirement of Article III of the Constitution "obligates the federal courts to hear only suits in which the plaintiff has alleged some actual or threatened harm to him or herself, as a result of a 'putatively illegal action.' " *Leibovitz v. N.Y. City Transit Auth.,* 252 F.3d 179, 184 (2d Cir.2001) (quoting *Linda R.S. v. Richard D.,* 410 U.S. 614, 617, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973)). To meet the constitutional requirement of standing, a plaintiff must allege a sufficient personal stake in the

outcome of the controversy "to ensure the presence of 'that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends.'" *Lee v. Bd. of Governors of Fed. Reserve Sys.*, 118 F.3d 905, 910 (2d Cir.1997) (quoting *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962)). A plaintiff must allege and prove (1) injury in fact, i.e., injury that is concrete and particularized as well as actual or imminent and not just conjectural or hypothetical, (2) a causal connection between the injury and the defendant's wrongful action, and (3) the likelihood that the requested relief will redress the injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

■ In essence, Berrian complains that were he to appeal to the Appellate Division, his appeal would be mooted by a reappearance before the Board. Yet, he has never actually appealed to the Appellate Division. (*See* Compl. ¶¶ 7, 11, 13, 17). Rather, after each of the four denials of parole between 2002 and 2006, Berrian contends that he "kn[e]w" that an appeal "would have proved to be futile" and therefore "cho[ ]se not to exercise [that] option." (*Id.* ¶¶ 7, 11, 17; *see id.* ¶ 13). Consequently, none of the parole denials cited in his complaint actually resulted in a decision of the Appellate Division finding any appeal moot, because Berrian never brought any of these denials of parole to the Appellate Division. Berrian cannot complain that inmates are prevented from fully exhausting available state court remedies when he has never actually *tried* to fully exhaust his available state court remedies.

Hence, Berrian's claimed "injury" is the very definition of speculative and hypothetical, and his contention that he "knew" that any appeal would be moot if taken to the Appellate Division must be rejected.

"It is just not possible for a litigant to prove in advance that the judicial system will lead to any particular result in his case." *Whitmore v. Arkansas*, 495 U.S. 149, 159–60, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990). Furthermore, Berrian's claim that his own past experience taught him that an appeal could be mooted by a reappearance before the Board is simply false. (*See* Compl. ¶ 7). Neither of the cases he cites stand for this proposition: *Berrian v. Coughlin*, 635 N.Y.S.2d at 779, was affirmed on the merits; *Berrian v. Goord*, 720 N.Y.S.2d at 76, is a summary affirmance without discussion, but, in any event, does not support Berrian's allegations about the futility of an appeal.

Additionally, the cases cited by Berrian to bolster his contention that prisoners cannot obtain meaningful review because of the timing relation between Board reappearances and the appeals process in fact show the opposite. Upon review of the lower court's decision in *Chan v. Travis*, the Appellate Division did find the cross-appeal moot, but did so because the prisoner, Chan, had been released on parole. 3 A.D.3d 820, 770 N.Y.S.2d 896, 896 (3d Dep't 2004). I will not speculate as to what the Appellate Division would have done were Chan still incarcerated at that time. *See Whitmore*, 495 U.S. at 159–60, 110 S.Ct. 1717. The other cases attached to the complaint by Berrian have no relation to the mootness doctrine. *See Marciano v. Goord*, 38 A.D.3d 217, 830 N.Y.S.2d 552, 553–54 (1st Dep't 2007) (finding that substantial evidence did support rescission of temporary release, but remanding to cure procedural error); *Coaxum*, 827 N.Y.S.2d at 489 (remanding to Board for rehearing). All three cases, however, do demonstrate the following about the New York courts: (1) there is concern about both substantive issues and procedural due process; (2) a prisoner can receive

meaningful review of a denial of parole or release by the Board or another committee; and (3) prisoners can and do prevail. *See Marciano*, 830 N.Y.S.2d at 553–54 (finding that revocation of temporary release was supported by substantial evidence, but remanding to cure procedural defect); *Coaxum*, 827 N.Y.S.2d at 494–98 (finding that Board failed to consider statutory factors and improperly considered impermissible factors in denying parole, and remanding for rehearing); *Chan*, 770 N.Y.S.2d at 896 (upon review of lower court's grant of a rehearing before the Board, court dismissed as moot appeal unopposed by prisoner rather that vacate and remand, because prisoner had been released on parole). Berrian's claim that meaningful review is unavailable is belied by his own submissions to this Court.

I conclude that Berrian lacks standing to bring this action, because he has not suffered the injury he complains of. Even assuming that the interplay between the Board, PAU, and the courts would result in a prisoner's appeal being mooted before it could be adjudicated, for Berrian this scenario is only hypothetical. He has consistently chosen to forgo the appeals process based, as he repeatedly states in his complaint, on his "belief" that any appeal would be moot. Accordingly, the complaint must be dismissed.

### CONCLUSION

Defendants have raised other meritorious arguments in support of their motions to dismiss. In light of plaintiff's lack of standing, I do not discuss them.

 For the reasons set forth above, the motion to dismiss is granted. Additionally, I do not grant Berrian leave to amend his complaint. It is true that a court should not dismiss a *pro se* complaint "without granting leave to amend at least once when the complaint gives 'any indica-

tion that a valid claim might be stated.' " *Frasier v. Gen. Elec. Co.*, 930 F.2d 1004, 1007 (2d Cir.1991) (quoting *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir.1991)); *see also* Fed.R.Civ.P. 15(a) (leave to amend "shall be freely given when justice so requires"); *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) (generally, permission to amend should be freely granted). Here, however, Berrian can articulate no set of facts that would confer standing. Accordingly, amendment would be futile.

The Clerk of the Court shall close this case.

SO ORDERED.