[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-13493

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 6, 2011
JOHN LEY
CLERK

D. C. Docket No. 05-00111-CV-5-LAC-MD

THOMAS C. O'BRYANT,

Plaintiff-Appellant,

versus

M. D. FINCH,

Defendant-Appellee,

SHANNON R. HERRING, et al.,

Defendants.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(April 6, 2011)

Before HULL, KRAVITCH and BLACK, Circuit Judges.

PER CURIAM:

Plaintiff-Appellant Thomas C. O'Bryant ("O'Bryant"), a prisoner in the custody of the Florida Department of Corrections ("FDOC"), appeals from the district court's judgments in favor of the seven defendant prison officials on his 42 U.S.C. § 1983 claims. Specifically, O'Bryant appeals the district court's: (1) grant of summary judgment to four Defendants-Appellees, J.A. Peters, C.L. Pittman, G.L. Taylor, and Vanessa Rhynes, on his § 1983 claims that they violated his due process rights in various ways during his prison disciplinary proceedings; (2) grant of summary judgment to two Defendants-Appellees, Shannon Herring and B.G. Baines, on O'Bryant's claim that they retaliated against him for filing grievances, in violation of O'Bryant's First Amendment rights; and (3) the verdict and final judgment, after a bench trial, in favor of Defendant-Appellee Mitchell D. Finch on O'Bryant's claim that Finch conducted a cell search in retaliation for O'Bryant's grievance filings.[1]

After review of the parties' briefs and the record, and with the benefit of oral argument, we conclude that none of O'Bryant's claims on appeal have merit and thus affirm the district court's rulings. Only O'Bryant's First Amendment

---

[1]As to his claims against Finch, O'Bryant challenges some of the district court's rulings, including its evidentiary rulings during his bench trial. All seven Defendants moved for summary judgment and the magistrate judge recommended granting the motion for six Defendants, but not for Defendant Finch. The district court adopted the recommendation, held a bench trial as to Finch, and found in favor of Finch after the trial.

retaliation claim against Defendants Herring and Baines warrants further discussion.

## I. FACTUAL BACKGROUND

O'Bryant is serving two life sentences in the FDOC. During the events giving rise to this suit, O'Bryant was housed at Holmes Correctional Institution ("HCI"). All seven Defendants-Appellees were correctional staff working at HCI during the relevant times covered by O'Bryant's amended complaint. O'Bryant is now housed at another prison facility.

While at HCI on October 27, 2004, O'Bryant received a consultation involving questions he had regarding prison rules. On October 28, 2004, O'Bryant filed an informal grievance about this consultation process. When the informal grievance went unanswered, he filed a formal grievance on November 10, 2004. Regarding those October grievances, O'Bryant appealed to the FDOC on December 10, 2004. The appeal was denied because the FDOC deemed that the institutional-level response was appropriate.

O'Bryant alleges that, on December 13, 2004, prison staff at HCI began retaliating against him for filing the October grievances. We recite a December 13 incident as background to the December 14 and 17 disciplinary reports by Defendants Herring and Baines. Specifically, O'Bryant claims that on December

3

13, 2004, Defendant Finch searched O'Bryant's cell in retaliation for O'Bryant's filing the October grievances. During the search, Finch found a bottle of whiteout, which is contraband. Finch did not file a disciplinary report. O'Bryant, however, alleged that Finch told him to cease filing grievances or O'Bryant would be subjected to disciplinary reports and administrative confinement. O'Bryant filed a grievance about this incident the day it happened. After a bench trial, the district court found in favor of Defendant Finch.[2] With this background of the December 13 cell search by Defendant Finch, we turn to the December 14 and 17 incidents involving Defendants Herring and Baines, respectively.

## A.    Herring Disciplinary Report

On December 14, 2004, prison officials ordered O'Bryant to meet with various prison staff, including Defendant Herring, to discuss O'Bryant's complaints. Herring and O'Bryant disagree as to what happened next.

According to Herring, when Herring attempted to counsel O'Bryant about O'Bryant's failure to check in with Herring at the Center Gate upon returning from a call-out, O'Bryant said, "The cold has done got to your brain and made you

---

[2]O'Bryant did not tell Defendant Finch who gave him the whiteout, but did confirm that it came from another prisoner, not correctional staff. According to Defendant Finch, at the time he conducted the cell search, he did not know that O'Bryant had filed grievances against correctional staff. According to Finch, he was never asked or instructed to threaten or retaliate against O'Bryant, and the purpose of the cell search was to insure prison security.

ignorant. I did check in." Herring continued to counsel O'Bryant, but O'Bryant told Herring that "you're fucking retarded." The shift officer in charge authorized Herring to write a disciplinary report. Herring subsequently issued a disciplinary report ("Herring DR") against O'Bryant for disrespect. O'Bryant was placed in administrative confinement pending resolution of the charge against him.

O'Bryant's version of events differs. When O'Bryant arrived at Center Gate, Herring told O'Bryant to eat and then wait on the benches nearby. According to O'Bryant, after the inmates finished eating, Herring called for O'Bryant, told O'Bryant to turn around and "cuff up," and told O'Bryant he was "going to jail for disrespect."[3] Herring told O'Bryant that O'Bryant had disrespected him, and when O'Bryant asked how he had disrespected Herring, Herring replied "I'll think up something."

On December 15, 2004, O'Bryant received written notice of the Herring charge. The notice informed O'Bryant that an impartial investigation would be performed and that he would have the following rights during that investigation: (1) he could request staff assistance; (2) he would be informed of the charges against him during the investigation;[4] and (3) he should make any witnesses known

---

[3] "Going to jail" is a euphemism used in prison to refer to disciplinary confinement separate from the open population housing.

[4]The notice also included a "statement of facts" that recited the factual charges Herring made against O'Bryant.

to the investigating officer, and those witnesses' testimonies would be presented by written statements. The notice also provided O'Bryant information about his rights during the disciplinary hearing, including, inter alia: (1) the right to request that the hearing be conducted by the disciplinary team rather than the hearing officer; (2) the right to appear in person at the hearing; (3) the right to request staff assistance; (4) the right to make a statement; (5) the right to present evidence and witnesses as deemed appropriate by the disciplinary team or hearing officer; (6) the right to be informed verbally and in writing of the disciplinary panel's decision and the evidence relied upon in coming to the decision; and (7) the right to appeal the decision to the warden. O'Bryant was given an opportunity to write out his version of the incident, which he did.

For the Herring DR, a disciplinary panel hearing was held on December 21, 2004, in front of Defendants Peters and Pittman. O'Bryant indicated that he did not make the statements attributed to him in the Herring DR and that, in fact, the entire incident alleged in the Herring DR was fabricated. O'Bryant contended that Herring created the DR in retaliation for O'Bryant's having filed earlier grievances against staff at HCI. After hearing O'Bryant's explanation of the Herring DR, the panel found O'Bryant guilty "based on Officer S. Herring's statement" and

6

sentenced him to 30 days' disciplinary confinement.[5]

O'Bryant appealed the disciplinary action to the warden, claiming that the Herring DR was false and retaliatory; that he had not received credit for time served in confinement; and that the disciplinary hearing team was not impartial.[6] O'Bryant's appeal was unsuccessful.

## B.    Baines Disciplinary Report

The December 17 disciplinary report involved O'Bryant and Defendant Baines. Baines asserts that he asked O'Bryant to back away from his cell door because of an emergency in another cell. O'Bryant then said, "And if I don't, I guess you'll write me a damn disciplinary report, won't you[?]"

O'Bryant's version of events differs. According to O'Bryant, he was laying on his bunk on December 17, 2004 when Defendant Baines stopped in front of his cell. Baines made a comment that O'Bryant could not hear, and when O'Bryant asked Baines what Baines had said, Baines replied, "You'll find out."

On December 21, 2004, O'Bryant was served with notice of a disciplinary report written by Baines ("Baines DR") alleging "disrespect to officials."[7] This

_____

[5]There is no evidence O'Bryant lost any good time credits.

[6]Among other things, O'Bryant complained that a witness presided over the hearing. Defendant Peters was listed on O'Bryant's witness sheet, apparently as a character witness.

[7]The magistrate judge's report and recommendation says O'Bryant was served on December 20. The record, however, appears to indicate that he was served on December 21.

December 21 notice informed O'Bryant of his rights during the investigation process and at the disciplinary hearing; the notice catalogued the same rights he had during the Herring DR investigation and hearing process.

For the Baines DR, a disciplinary panel hearing was held on December 29, 2004, in front of Defendants Taylor and Rhynes. O'Bryant contended that the Baines DR was entirely false and written for purely retaliatory reasons. O'Bryant was found guilty "based on Sergeant B. Baine's [sic] statement" and was sentenced to another 30 days' disciplinary confinement.[8]

O'Bryant appealed unsuccessfully to the warden.

## C.    Procedural History

On May 26, 2005, O'Bryant filed a complaint in the United States District Court for the Northern District of Florida alleging, inter alia, that Defendants Herring and Baines violated O'Bryant's First Amendment rights by retaliating against him for filing grievances against HCI staff. O'Bryant alleges Herring and Baines made false disciplinary reports to retaliate against him. The matter was referred to a magistrate judge, who determined that "where a prisoner is actually found guilty of a disciplinary infraction, he does not state a claim for retaliation in

The confusion may come from the Baines DR's having been written on December 20.

[8]There is no evidence O'Bryant lost any good time credits.

the writing of the DR." The magistrate judge concluded that because "[t]he record reflects that plaintiff was convicted of the DR after a hearing at which due process was afforded . . . [,]" and O'Bryant's punishment "was imposed based on an actual violation of prison rules[] . . . [,]" O'Bryant had no claim for a constitutional violation. The district court subsequently adopted the magistrate judge's recommendation and granted summary judgment to Defendants Herring and Baines on O'Bryant's First Amendment retaliation claims. O'Bryant timely appealed.[9]

## II. DISCUSSION

### A.    Retaliation Claims

"The First Amendment forbids prison officials from retaliating against prisoners for exercising the right of free speech." Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003). "It is an established principle of constitutional law that an inmate is considered to be exercising his First Amendment right of freedom of speech when he complains to the prison's administrators about the conditions of his confinement." Smith v. Mosley, 532 F.3d 1270, 1276 (11th Cir. 2008) (citing Farrow, 320 F.3d at 1248).

---

[9]We review the district court's grant of summary judgment de novo, considering all evidence in the light most favorable to the non-moving party. Rioux v. City of Atlanta, 520 F.3d 1269, 1274 (11th Cir. 2008).

An inmate may maintain a cause of action for retaliation under 42 U.S.C. § 1983 by showing that a prison official's actions were "the result of [the inmate's] having filed a grievance concerning the conditions of his imprisonment." Farrow, 320 F.3d at 1248 (quotation marks omitted and emphasis added). To establish a First Amendment retaliation claim, a prisoner need not allege the violation of an additional separate and distinct constitutional right; instead, the core of the claim is that the prisoner is being retaliated against for exercising his right to free speech. Id. To prevail on a retaliation claim, the inmate must establish that: "(1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the [official's] allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action [the disciplinary punishment] and the protected speech [the grievance]." Mosley, 532 F.3d at 1276.[10]

Here, O'Bryant alleges that Defendants Herring and Baines fabricated facts underlying disciplinary reports to retaliate against him for filing earlier grievances

---

[10]Some courts appear to describe the type of retaliation claim here– filing false disciplinary charges in retaliation for the inmate's grievances– not as a First Amendment retaliation claim but as a substantive due process claim. See Black v. Lane, 22 F.3d 1395, 1402-03 (7th Cir. 1994) ("Issuing false and unjustified disciplinary charges can amount to a violation of substantive due process if the charges were in retaliation for the exercise of a constitutional right."). Our above precedent considers it more a First Amendment retaliation claim. However labeled, our Court recognizes that an inmate has a § 1983 action if prison officials file false disciplinary charges in retaliation for the inmate exercising his right to free speech by making grievances about prison conditions.

against HCI staff.  Thus, the alleged retaliatory conduct is the false disciplinary charges.  O'Bryant alleges that he did not say what Herring and Baines reported in their disciplinary reports and that Herring and Baines made their false reports only to retaliate.

The Defendants respond that O'Bryant was found guilty of the disciplinary charges based on evidence and after a hearing in which O'Bryant was afforded procedural due process.  As a result, the Defendants contend that O'Bryant cannot establish a retaliation claim when he has been found guilty of the actual conduct underlying the disciplinary reports and that conduct violates prison rules. O'Bryant counters that (1) he was not afforded adequate due process, and (2) in any event, he can still state a retaliation claim after adequate due process.  To aid our inquiry, we first review Supreme Court decisions about due process in prison disciplinary proceedings.

## B.    Wolff and Hill

In Wolff v. McDonnell, 418 U.S. 539, 94 S. Ct. 2963 (1974), state inmates filed suit under § 1983 alleging several prison rules and regulations "did not comply with the Due Process Clause of the Fourteenth Amendment . . . ." Id. at 542-43, 94 S. Ct. at 2968.  In Nebraska, a state statute created good time credits and state prisoners could lose those good time credits if they were guilty of

11

"serious misconduct." Id. at 547, 94 S. Ct. at 2970. The Supreme Court held that a prisoner had a protected liberty interest in statutory good time credits, and thus had a constitutional right to procedural due process in a disciplinary hearing. Id. at 555-57, 94 S. Ct. at 2974-75.

The Supreme Court in Wolff outlined the specific hearing procedures that prison disciplinary panels must comply with to satisfy the standards of procedural due process in the prison setting. Id. at 556, 94 S. Ct. at 2975 ("Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply."). Wolff instructed that prisoners must receive: (1) advance written notice of the charges against them; (2) an opportunity for the inmate to call witnesses and present documentary evidence, so long as doing so is consistent with institutional safety and correctional goals; and (3) a written statement by the factfinder outlining the evidence relied on and the reasons for the disciplinary action. Id. at 563-67, 94 S. Ct. at 2978-80.

Similarly, in Superintendent v. Hill, 472 U.S. 445, 105 S. Ct. 2768 (1985), the Supreme Court addressed the requirements of procedural due process in the prison setting. Inmate Hill had his good-time credits revoked after a disciplinary board found him guilty of violating prison regulations for his involvement in an

12

assault on another prisoner. Id. at 448, 105 S. Ct. at 2770.[11] His conviction, in turn, was based on testimony by a prison guard at his disciplinary hearing. Id. at 447, 105 S. Ct. at 2770. Hill instructed that the revocation of good time credits only satisfies minimal standards of procedural due process if "the findings of the prison disciplinary board are supported by some evidence in the record." Id. at 454, 105 S. Ct. at 2773 (emphasis added). The Supreme Court also advised that "[a]scertaining whether this [due process] standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." Id. at 455, 105 S. Ct. at 2774. According to the Supreme Court, "the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id. at 455-56, 105 S. Ct. at 2774 (emphasis added). Applying these rules, the Supreme Court determined that the complaining guard's oral testimony and written report were "sufficient to meet the requirements imposed by the Due Process Clause." Id. at 456, 105 S. Ct. at 2774.[12]

Taking into account the unique concerns surrounding prison disciplinary

---

[11]In Hill, the inmate accumulated good time credits that reduced his term of imprisonment under Massachusetts law. "Such credits may be lost 'if a prisoner violates any rule of his place of confinement.'" 472 U.S. at 447, 105 S. Ct. at 2769. Hill had lost 100 days of good time and was confined in isolation for 15 days. Id. at 448, 105 S. Ct. at 2770.

[12]We recognize that Hill did not arise from the retaliation context. However, its teachings on the Due Process Clause are nonetheless relevant to O'Bryant's claims.

13

proceedings, the Supreme Court in Hill emphasized that those hearings "take place in a highly charged atmosphere" in which "prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances." Id. The Supreme Court concluded that due process merely requires that there be some evidence in the record that supports the decision of the disciplinary board. Id. at 455-56, 105 S. Ct. at 2774. The Supreme Court instructed that: "[t]he fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact." Id. at 456, 105 S. Ct. at 2774 (emphasis added). This is because "[r]evocation of good time credits is not comparable to a criminal conviction, and neither the amount of evidence necessary to support such a conviction, nor any other standard greater than some evidence applies in this context." Id. (citations omitted).[13]

The clear implication of Hill is that courts are not to conduct exhaustive reviews of the findings of prison disciplinary panels. Id. at 457, 105 S. Ct. at 2775 ("Although the evidence in this case might be characterized as meager, . . . the

_____

[13] For the Herring DR and the Baines DR, O'Bryant received 30 days' disciplinary confinement. Because O'Bryant undisputedly did not lose any good time credits, the Defendants argue O'Bryant did not lose a liberty interest that triggered procedural due process requirements under either Wolff or Hill. O'Bryant responds that he was at risk of losing good time credits, which is sufficient. We need not resolve this liberty-interest question because we discuss only O'Bryant's retaliation claim and only whether O'Bryant's conviction after being afforded due process bars his retaliation claim for allegedly false disciplinary charges.

14

record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary."); see Young v. Jones, 37 F.3d 1457, 1460 (11th Cir. 1994) (stating the Wolff Court "indicated a reluctance to review the judgments of prison administrators and acknowledged that prison disciplinary proceedings do not require the 'full panoply of rights' due a defendant in a criminal proceeding").[14]

## C.    O'Bryant Received Due Process

In this case, the record establishes that the prison officials complied with the requirements of Hill and Wolff. O'Bryant received detailed written notice of the charges against him, and of his rights during the investigations and hearings. See Wolff, 418 U.S. at 563, 94 S. Ct. at 2978 (requiring advance written notice of charges). O'Bryant had the opportunity to present evidence and witnesses, as stated in the notice provided before his disciplinary hearings. See id. at 566, 94 S. Ct. at 2979 (stating that prisoners should be allowed to call witnesses and present evidence so long as it does not interfere with institutional safety or legitimate correctional goals). O'Bryant also received written statements of the findings against him and the evidence relied upon by the disciplinary panels. See id. at 563,

---

[14]The Young Court further explained that "this court should not be forced into the role of judging and reweighing the evidence presented in a prison disciplinary hearing." 37 F.3d at 1460.

94 S. Ct. at 2978 (requiring that factfinder give prisoner written notice of evidence relied on and reasons for disciplinary action). He also received some protections not mandated by Wolff or Hill, such as the rights to request staff assistance and to appeal the panels' decisions to the warden. Finally, the written statements by Herring and Baines constituted evidence before the disciplinary panels that supported the panels' decisions. See Hill, 472 U.S. at 456, 105 S. Ct. at 2774 (finding that prison disciplinary panel complied with due process requirements when convicting prisoner based on oral testimony and written report by prison guard).

Having determined O'Bryant received procedural due process in these two disciplinary hearings, we turn to whether he can establish a retaliation claim for false disciplinary charges after being afforded due process and found guilty of the actual conduct in the charges.

## D.    O'Bryant's Retaliation Claims

Under the circumstances of this case, we conclude that O'Bryant's retaliation claims fail for either of two independent reasons. First, an inmate cannot state a claim of retaliation for a disciplinary charge involving a prison rule infraction when the inmate was found guilty of the actual behavior underlying that charge after being afforded adequate due process. Second, and independent of his

ability to state a retaliation claim, O'Bryant has not shown a causal connection between his earlier grievances and the disciplinary harm in this case.

As to the first ground, we agree with the Eighth Circuit that a prisoner cannot maintain a retaliation claim when he is convicted of the actual behavioral violation underlying the alleged retaliatory false disciplinary report and there is evidence to sustain the conviction. See, e.g., Hartsfield v. Nichols, 511 F.3d 826, 829 (8th Cir. 2008) (involving allegations of false disciplinary reports and concluding "claims of retaliation fail if the alleged retaliatory conduct violations were issued for the actual violation of a prison rule"); Henderson v. Baird, 29 F.3d 464, 469 (8th Cir. 1994) (noting inmate alleged officer was lying but concluding that the finding of an actual violation of prison rules was based on some evidence of the violation and "essentially checkmates [the prisoner's] retaliation claim"); Orebaugh v. Caspari, 910 F.2d 526, 528 (8th Cir. 1990) ("[N]o claim can be stated when the alleged retaliation arose from discipline imparted for acts that a prisoner was not entitled to perform.").

The Eighth Circuit explained that "a defendant may successfully defend a retaliatory discipline claim by showing 'some evidence' the inmate actually committed a rule violation." Hartsfield, 511 F.3d at 829.[15] The Eighth Circuit's

---

[15]The Eighth Circuit added that "a report from a correctional officer, even if disputed by the inmate and supported by no other evidence, legally suffices as 'some evidence' upon which

17

conclusion essentially rests on these principles: (1) the inmate was charged with conduct that is not protected speech but actually violates a prison rule; and (2) the inmate is found guilty of the actual behavioral violation after being afforded adequate due process in the prison setting.

We agree with these principles too. If a prisoner is found guilty of an actual disciplinary infraction after being afforded due process and there was evidence to support the disciplinary panel's fact finding, the prisoner cannot later state a retaliation claim against the prison employee who reported the infraction in a disciplinary report. Whether an inmate actually committed the charged infraction or whether the disciplinary report falsely accuses the inmate are questions of fact that are decided by the disciplinary panel. In the particular circumstances here, O'Bryant has suffered adverse action (here 30 days' disciplinary confinement) because he actually violated the prison rules and not because of his earlier grievances. To find otherwise would render the prison disciplinary system impotent by inviting prisoners to petition the courts for a full retrial each time they are found guilty of an actual disciplinary infraction after having filed a grievance. Because he was guilty of the disciplinary charges resulting in the disciplinary harm

---

to base a prison disciplinary violation, if the violation is found by an impartial decisionmaker." Hartsfield, 511 F.3d at 831.

18

at issue, O'Bryant's retaliation claim fails.[16]

## E.  Lack of Causal Connection

O'Bryant's retaliation claim also fails for another independent reason.

Specifically, O'Bryant has not established a causal connection between his earlier

grievances and the disciplinary harm.  In this regard, we review our recent prison-

retaliation decisions that address the requisite causal connection: (1) Smith v.

Mosley, 532 F.3d 1270 (11th Cir. 2008); and (2) Moton v. Cowart, 631 F.3d 1337

(11th Cir. 2011).

### 1.  Smith v. Mosley

In Mosley, a prison inmate ("Smith") sued Warden Gwendolyn Mosley

("Mosley"), Assistant Warden Kenneth Jones ("Jones"), and Lt. Kenneth Sconyers

("Sconyers") under 42 U.S.C. § 1983, alleging retaliation against him for engaging

in protected speech.  532 F.3d at 1271-72.  The inmate had sent a letter to

---

[16]While we follow the Eighth Circuit's reasoning, we note two other circuits have reached different conclusions, but arguably under either different facts, see Graham v. Henderson, 89 F.3d 75 (2d Cir. 1996), or different reasoning, see Black, 22 F.3d 1395 (discussed at note 10, supra).

In Graham, the inmate alleged correctional staff filed false reports against him in retaliation for filing a grievance to protest the removal of showers. Id. at 79. The factual issue in Graham was whether the disciplined "protest" conduct was constitutionally protected grievance conduct, or was prohibited by prison regulations. There is no analogous issue of fact in this case. Id. at 79-81. O'Bryant's insubordinate speech in the disciplinary charges is properly prohibited by prison regulations and is not constitutionally protected speech. Mosley, 532 F.3d at 1277 (stating inmate's insubordinate remarks fell within the prison rules' proscriptions and were not protected speech). While filing a grievance is constitutionally protected conduct, the disciplined conduct in this case is entirely separate and distinct from O'Bryant's conduct in the exercise of free speech.

Defendant Jones and the United States Department of Justice ("DOJ")

complaining about prison conditions. Id. at 1272-74.

The Court determined that these two parts of inmate Smith's letter amounted

to grievances protected by the First Amendment: (1) a statement that inmates with

compromised immune systems who were susceptible to pneumonia were forced to

go outside in the cold with substandard clothing and no protection; and (2) a

statement that Smith was being fed a diet consisting of 95% starch when prison

officials knew he was a diabetic. Id. at 1276.

In contrast, the Court determined other allegations in inmate Smith's letter

were not protected speech but were instead violations of prison rules. Id. at 1276-

77. Smith's first non-protected statement violated a prison rule forbidding false

statements to a DOC employee with intent to deceive or to prejudice another

person, and read: "Like that fiasco in 1999, where the administrative heads of this

institution decided to vaccinate everyone in this institution against the venereal

disease syphilis." Id. at 1274 (quotation marks omitted). Smith's second group of

non-protected statements, which ran afoul of a prison rule forbidding

insubordination, stated: "Maybe you should be forced to stand around outside,

unsheltered, in thirty-eight degrees, with a 10-15 MPH breeze blowing. See how

you'd like it." Id. at 1276. Smith's letter also insinuated that getting prisoners sick

20

would be a good way to "limit the population in the prisons," and compared the prison's programs to the "Tuskegee Study." Id. at 1276-77.

Believing Smith's letter violated prison rules, Defendant Jones prepared an incident report and submitted it to his supervisor, Defendant Mosley. Id. at 1273. After meeting with Mosley, Defendant Jones met with Smith and informed Smith that he would have a disciplinary hearing to determine whether Smith had violated prison rules. Id. at 1273-74. Jones prepared separate disciplinary reports for each infraction. After separate hearings on the charges, hearing officer Davis found Smith guilty of each charge. Id. at 1274-75. A prison rule required that all determinations by hearing officers be reviewed by the warden or a designee. Id. at 1275. Warden Mosley designated Lt. Sconyers to serve as review officer. Id. Sconyers approved Davis's findings and recommendations. Id.

Inmate Smith's § 1983 retaliation suit alleged that Defendants Mosley, Jones and Sconyers "commenced the disciplinary hearing in retaliation against him for exercising his First Amendment right of free speech." Id. at 1275. This Court determined that the first two elements of a retaliation claim were met: (1) two of the grievances in Smith's letter were protected speech; and (2) the disciplinary action taken against him would likely deter his speech. Id. at 1276-77.[17] Thus, the

_____

[17]The Court in Smith v. Mosley acknowledged that in order to maintain a retaliation claim against prison officials, an inmate must establish that: "(1) his speech was constitutionally

21

main issue confronting the Court was whether there was a causal relationship between Smith's constitutionally protected speech (the two grievances) and the discipline meted out to Smith for the two disciplinary charges.

The Court in <u>Mosley</u> explained that the causal connection inquiry asks "whether the defendants were subjectively motivated to discipline because Smith complained of some of the conditions of his confinement." <u>Id.</u> at 1278. We stated that most courts determine actors' subjective motivation by applying the burden-shifting formula from <u>Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle</u>, 429 U.S. 274, 97 S. Ct. 568 (1977). <u>Mosley</u>, 532 F.3d at 1278. Under <u>Mt. Healthy</u>, "'[o]nce the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm [i.e., disciplinary action], the burden of production shifts to the defendant.'" <u>Mosley</u>, 532 F.3d at 1278 (quoting <u>Thaddeus-X v. Blatter</u>, 175 F.3d 378, 399 (6th Cir. 1999)). Then, "'[i]f the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on [his motion for summary judgment as a matter of law or prior to trial on] summary judgment.'" <u>Mosley</u>, 532 F.3d at 1278 (quoting <u>Thaddeus-X</u>, 175 F.3d at 399). In other words, if the official can show

protected; (2) the inmate suffered adverse action such that the administrator's allegedly retaliatory conduct would likely deter a person of ordinary speech and firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech." <u>Id.</u> at 1276.

that he would have taken the disciplinary action in the absence of the prisoner's protected conduct, he cannot be held liable. Mosley, 532 F.3d at 1278 n.22.

Turning to the facts of Smith's case, the Court in Mosley stated that "[w]hether a reasonable jury could find that Smith's grievances were the motivating factor behind the defendants' actions is a close question." Id. at 1278. "Smith introduced no direct evidence" that the grievances in the letter motivated the defendants' conduct about the other parts of the letter, and "there is nothing in [Smith's] responses to Jones's allegations that even suggests that he thought the charges were a mere pretext . . . ." Id. Although Smith pled guilty to the insubordination charge, Smith defended against the false statement charge, pointing out that the syphilis inoculations had actually taken place. Id. at 1274-75. Jones, however, pointed out (1) that the inoculations were carried out by the Alabama Department of Health, and (2) that Smith's statements in the letter—that the inoculations were given at the direction of the prison's administration—were meant to prejudice the prison administration because Smith's letter was sent to the DOJ. Id. at 1275.

The Court in Mosley then "assume[d] without deciding that a reasonable fact finder could infer from the circumstances, . . . that the letter's presentation of the grievances was a motivating factor in Mosley and Jones's decision to go forward

23

with the charges," which also stemmed from the exact same letter. Id. at 1278-79 (emphasis added). The question under Mt. Healthy became "whether a reasonable fact finder, a jury, would have to find that the defendants would have disciplined Smith even in the absence of the protected conduct, i.e., the submission of grievances." Id. at 1279 (quotation marks omitted). The Court determined that Defendants Mosley and Jones would have acted as they did even absent Plaintiff Smith's protected conduct (the grievances). Id. The Court stated that "[o]bjective prison administrators standing in Mosley and Jones's shoes would assume that the gist of what Smith said in his letter, and the language he employed, which reeked of disrespect for the administrators' authority, would be noised about the prison's population and, if ignored, could seriously impede their ability to maintain order and thus achieve the institution's penological objectives." Id. As to Smith's retaliation claim, this Court thus affirmed the district court's entry of summary judgment for the defendant prison officials.

    2.   Moton v. Cowart

Retaliatory disciplinary conduct was also an issue in Moton v. Cowart, 631 F.3d 1337 (11th Cir. 2011), where this Court reversed the entry of summary judgment for the Defendant prison official, Captain Cowart. Inmate Moton had filed an October 30, 2004 grievance in which he wrote in large capital letters:

"REMEDY: RETURN MY REQUEST DATED 10-15-04 WITH APPROPRIATE ANSWER AS REQURED [sic]." Id. at 1339-40. Upon receipt, Defendant Cowart told Moton she would file a disciplinary report for disrespect. Id. Cowart contended Moton then told Cowart that "'she would be hearing from his lawyer'" and "[y]ou will answer these grievances." Id. at 1340 (quotation marks omitted). Cowart filed two disciplinary reports alleging Moton violated prison rules prohibiting (1) "disrespect to officials . . . by means of words, gestures and the like" and (2) "making spoken, written or gestured threats against prison officials." Id. (quotation marks and brackets omitted). The disciplinary hearing team found Moton guilty, imposing disciplinary confinement and a loss of 60 days' gain time. Id. In Moton's appeal, the FDOC found him not guilty because Cowart's statement of facts did not support the charge. Id.

After stating the same three elements of a retaliation claim set forth in Mosley, this Court in Moton pointed out "[t]he district court assumed without deciding that Moton had satisfied the first two elements of his retaliation claim" and had granted summary judgment upon finding Moton failed to establish a causal connection between his October 30 grievance and statements and Cowart's retaliatory action. Id. at 1342.

Reversing in Moton, this Court concluded Moton had shown material issues

of fact between his grievance and the discipline Cowart imposed. As to the grievance in capital letters, this Court found "using large and upper case letters in a grievance, by itself," did not violate the prison rule prohibiting disrespect. Id. The Court also concluded "as a matter of law" that an inmate's statement that he wants or plans to contact his attorney does not constitute a punishable "spoken threat" and thus that prison rule was not violated, either. Id. at 1342-43 (quotation marks omitted). Accordingly, Moton's conduct did not violate any prison rule, and no prison infraction supported the discipline imposed.

This Court in Moton concluded (1) that "the district court erred by finding that Cowart 'reasonably' concluded that Moton's grievance violated the prison rule against disrespect because the grievance included large capital letters," id. at 1343, and (2) the district court erred by finding that Moton's statement "could be reasonably construed as a spoken threat." Id. at 1343 (quotation marks omitted). Moton thus showed both that the FDOC had found him not guilty and also that no objective prison official could reasonably conclude that Moton had violated any prison rule. Given there was no reasonable basis to support Cowart's disciplinary action that instantly followed Moton's written grievance and verbal attorney statement, Moton had created a fact issue as to "causal relationship between his grievance and the discipline Cowart imposed." Id. at 1342.

26

3.     O'Bryant's Lack of Causal Connection

With this background, we turn back to O'Bryant's case.  Even if O'Bryant's conviction under the DRs does not per se bar a retaliation claim, as suggested by the Eighth Circuit's precedent and now held by this Court above, O'Bryant's claim fails because he has not presented evidence of retaliatory animus on the part of either Defendant Herring or Defendant Baines.  See Harris v. Ostrout, 65 F.3d 912, 916 (11th Cir. 1995) (affirming summary judgment for defendant Collins because plaintiff "produced nothing, beyond his own conclusory allegations, suggesting that Collins' actions in compliance with the strip search regulations were motivated by a retaliatory animus"); see also Moton, 631 F.3d at 1341 ("To establish causation, the plaintiff must show that the defendant was subjectively motivated to discipline the plaintiff for exercising his First Amendment rights.") (quotation marks omitted).

And even assuming arguendo that O'Bryant has shown that Defendants Herring and Baines were subjectively motivated to discipline O'Bryant because of his grievances, the record shows the defendants would have taken the same disciplinary actions in the absence of O'Bryant's protected activity.  See Mosley, 532 F.3d at 1278 (stating "[i]f the defendant can show that he would have taken the same action in the absence of the protected activity, he . . . prevail[s] on . . .

27

summary judgment"); <u>Moton</u>, 631 F.3d at 1342 (quoting same). The gist of O'Bryant's statements each time reeked of disrespect of, and profanity to, the Defendants, who would have disciplined O'Bryant even without any grievances. Here, O'Bryant was convicted of the disciplinary charges and he would have suffered the same adverse action even if he had not engaged in the grievances.

Any possible causal connection between the protected activity (the grievances) and the harm (the disciplinary charges and sanctions) is severed since the harm is not in reaction to any protected activity, but directly due to an improper activity. Stated another way, even if some impermissible reason had entered into Herring and Baines's decision-making process to charge O'Bryant with prison disciplinary infractions, O'Bryant would have been disciplined anyway, as the hearing panels concluded he committed the charged conduct which violated prison rules.

## IV. CONCLUSION

For all of these reasons, we affirm the district court's rulings in this case and entry of final judgments in favor of the Defendants-Appellees.

**AFFIRMED.**

28