Alfred **ALVAREZ**, Plaintiff–Appellant,

v.

**SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS, et al.,** Defendants–Appellees.

No. 15–10506
Non-argument Calendar.

United States Court of Appeals,
Eleventh Circuit.

March 30, 2016.

Alfred Alvarez, Indiantown, FL, pro se.

Wakulla CI Warden, Wakulla CI–Inmate Trust Fund, Crawfordville, FL, for Plaintiff–Appellant.

Pam Bondi, Attorney General's Office, Tallahassee, FL, for Defendants–Appellees.

Before TJOFLAT, JULIE CARNES, and JILL PRYOR, Circuit Judges.

PER CURIAM:

Proceeding *pro se,* Plaintiff Alfred Alvarez sued more than a dozen defendants. Plaintiff moved to proceed *in forma pauperis,* and the district court granted the motion. The district court dismissed Plaintiff's claims pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), which permits a district court to dismiss an *in forma pauperis* complaint *sua sponte* if the complaint fails to state a claim. Plaintiff appeals. We reverse in part.

## BACKGROUND

### A. Facts

Plaintiff is a former informant who is imprisoned in Florida's "protective management" system. We assume to be true the following allegations made in Plaintiff's operative complaint. The following facts are described in Plaintiff's most recent complaint.[1] On March 6, 2011, Plaintiff requested that prison officials transfer him out of Florida. Plaintiff requested the transfer because he feared that inmates from the general population would infiltrate the protective management system and harm him. Indeed, Plaintiff received at least one threat from a general population inmate, and Plaintiff witnessed prison officials inadvertently placing several general population inmates into protective management.

After Plaintiff submitted his request, an officer informed Plaintiff that the "institutional classification team"—an intermediate review team—had reviewed Plaintiff's request and recommended his transfer. On April 13, 2011, still awaiting a final response to his transfer request, Plaintiff requested a status update from Defendant Correctional Services Administrator Cedric Sneed. The next day, Sneed responded that the Florida Department of Corrections was "investigating if all options had been exhausted before making a final decision of an out of state transfer." On April

---

1. *See Hughes v. Lott,* 350 F.3d 1157, 1159–60 (11th Cir.2003) ("A district court's *sua sponte* dismissal for failure to state a claim under § 1915(e)(2)(B)(ii) is reviewed ... [while] viewing the allegations in the complaint as true.").

24, 2011, Plaintiff responded to Sneed to encourage the approval of his transfer. On May 9, 2011, Sneed notified Plaintiff that the "transfer request was disapproved due to the department not exhausting all of its options to resolve [Plaintiff's] protection needs within the state prior to submission of the transfer request."

Soon after receiving the denial, Plaintiff began a long series of attempts to reverse his denial. Between the May 9, 2011 denial and November 2, 2011, Plaintiff repeatedly requested—in one form or another—that Sneed approve the transfer request or that the institutional classification team re-recommend Plaintiff's transfer. Specifically, Plaintiff describes at least seven formal or informal requests that he filed with prison officials between May 9, 2011, and November 2, 2011. Further, on October 7, 2011, Plaintiff's family and friends began e-mailing various defendants to express concern over Plaintiff's safety and over the transfer denial. Many of the requests from Plaintiff, his family, and his friends went unanswered, but Plaintiff "and his family continued vigorously in their position[,] addressing their concerns for the plaintiff's safety via inmate requests, informal and formal grievances[,] and emails to" various defendants "as well as to other officials."

On June 12, 2012, Defendant Security Sergeant Jamal Ingram wrote a disciplinary report that accused Plaintiff of "attempt[ing] to conspire." The report quoted Plaintiff as admitting that his "allegations and safety concerns were all lies." Plaintiff was confined for 30 days as a consequence of the disciplinary report, but the confinement did not stop Plaintiff's requests for help. Indeed,

"[w]hile in confinement ..., plaintiff filed grievances appealing the disciplinary team[']s findings." When Plaintiff emerged from confinement, he again filed a "grievance (appeal)," which Defendant Warden William Churchwell returned without disposition. On August 6, 2012, Plaintiff's family sent Defendant Douglas Craven, a member of the Classification Team, an e-mail expressing concern for Plaintiff's safety and requesting that Plaintiff "be re-recommended for [an interstate] transfer for his safety." [2] On the same day, at a "month review," Plaintiff gave Craven and Defendant Major J. Schweinsberg "an inmate request in reference to the [interstate] transfer." Plaintiff "asked that the [Florida Department of Corrections] rules be adhered to and that a written response to the inmate request ... be provided." Craven responded, "We have a place for you."

The next day, Craven and Schweinsberg recommended that Plaintiff be returned to confinement. Defendant Senior State Classification Officer Michael Workman approved the recommendation, and Plaintiff was returned to disciplinary "confinement and classified for placement on close management under the ruse that it was for the [June 12, 2012] disciplinary report ... and allegedly because the plaintiff's desperate behavior demonstrated a clear threat to the safety and security of" others. Plaintiff's second confinement occurred nearly a month after Plaintiff was released from the first confinement and more than two months after Ingram drafted the June 12 disciplinary report for the first confinement. In Plaintiff's experience, "it is unprecedented for an inmate to serve his confinement time for a [disciplinary report] and be released from confine-

---

**2.** Plaintiff's complaint elsewhere suggests that his family sent at least two concerned emails

on August 6, 2012.

ment to the general population and approximately a month later to be re-locked up in confinement."

On October 22, 2012, Plaintiff was transferred to a new Florida correctional facility for "close management status housing." The next day, Plaintiff began requesting "all his legal work stored" at his previous facility. Plaintiff received various conflicting responses but did not receive his legal work until February 21, 2013. Plaintiff alleges that this delay caused him to miss a November 26, 2012 criminal appeal deadline.

### B. District Court Proceedings

Plaintiff submitted three complaints to the district court. Following the filing of both the first and second complaints, the district court twice *sua sponte* directed Plaintiff to amend. Plaintiff ultimately filed a third complaint, the facts of which are presented above. The complaint names eleven defendants: Michael D. Crews, Cedric Sneed, William Churchwell, Charles Sexton, Norma Kelly, Douglas Craven, J. Schweinsberg, Michael Workman, FNU Beasly, Jamal Ingram, and Jeffery Beasley. Further, the complaint contains four counts, each alleged against an unspecified subset of Defendants. Count I alleges that "[t]he defendant(s)" violated the Eighth Amendment by failing to reasonably protect Plaintiff from danger and by failing to transfer Plaintiff to another state. Count II alleges that "[t]he defendant(s)" violated Plaintiff's Fourteenth Amendment equal protection right by treating similarly situated inmates favorably. Count III alleges that "Defendant(s)" violated the First Amendment by retaliating against Plaintiff for "writing inmate requests, grievances, [and] letters," and for "[P]laintiff's family sending emails." Count IV alleges that "Defendant(s)" violated the Fifth Amendment by withholding Plaintiff's legal documents.

The district court *sua sponte* dismissed Plaintiff's third complaint. The district court relied on 28 U.S.C. § 1915(e)(2)(B)(ii), which permits a district court to dismiss an *in forma pauperis* complaint *sua sponte* if the complaint fails to state a claim. The district court also denied three motions to appoint counsel. Plaintiff appeals.

### SCOPE OF REVIEW

Plaintiff purports to appeal six orders—the two orders directing him to amend, the three orders denying motions to appoint counsel, and the order dismissing his third complaint. Plaintiff's appellate brief, however, discusses only the order dismissing his third complaint.[3] Accordingly, we review only the third complaint and the corresponding dismissal. *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir.2008) ("While we read briefs filed by *pro se* litigants liberally, issues not briefed on appeal by a *pro se* litigant are deemed abandoned.") (citation omitted).

### STANDARD OF REVIEW

"This Court reviews a dismissal for failure to state a claim under § 1915(e)(2)(B)(ii) *de novo*." *Troville v. Venz*, 303 F.3d 1256, 1259 (11th Cir.2002). And "we ... apply Rule 12(b)(6) standards in reviewing dismissals under section 1915(e)(2)(B)(ii)." *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir.1997).

### ANALYSIS

#### A. Count I: Eighth Amendment

Plaintiff's Eighth Amendment claim alleges that his conditions of confinement

---

**3.** Indeed, Plaintiff's appellate brief concludes by requesting that we "remand this case ... to proceed with ... the Second Amended Complaint."

862

subject him to an unacceptable risk of injury from general population inmates.

The Eighth Amendment prohibits "cruel and unusual" punishment. And "[t]he 'cruel and unusual punishments' standard applies to the conditions of a prisoner's confinement." *Chandler v. Crosby*, 379 F.3d 1278, 1288 (11th Cir.2004). Indeed, "[i]t has long been recognized that ... 'prison officials have a duty to protect prisoners from violence at the hands of other prisoners.' " *Brooks v. Warden*, 800 F.3d 1295, 1301 (11th Cir.2015). "A prison official violates the Eighth Amendment when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk." *Id.* Thus, to succeed on an Eighth Amendment claim, a plaintiff must show "(1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) a causal connection between the defendants' conduct and the Eighth Amendment violation." *Id.* Plaintiff's complaint fails to satisfy the first two elements.

A plaintiff's allegations of substantial risk are evaluated using an objective standard. *Id.* Under the objective standard, the plaintiff must "allege a prison condition that is so extreme that it poses an unreasonable risk of serious damage to the prisoner's health or safety." *Richardson v. Johnson*, 598 F.3d 734, 737 (11th Cir.2010). In other words, a plaintiff must allege facts showing a "strong likelihood" of a substantial injury, not just "a mere possibility" of a substantial injury. *Brooks*, 800 F.3d at 1301.

A plaintiff's allegations of deliberate indifference are evaluated using a subjective standard. Under the subjective standard, a plaintiff must allege that a prison official (1) had subjective knowledge of a substantial risk of serious harm and (2) disregarded that risk "by conduct that is more than mere negligence." *Richardson*, 598 F.3d at 737; *accord Farmer v. Brennan*, 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) ("[D]eliberate indifference describes a state of mind more blameworthy than negligence."); *Kelley v. Hicks*, 400 F.3d 1282, 1285 (11th Cir.2005) ("Mere negligence, however, is insufficient to establish deliberate indifference.").

Plaintiff argues that he is at risk of an attack from other inmates who view him as a "snitch." Plaintiff recognizes that he is already subject to Florida's "protective management" system, but he argues that the system is nonetheless not safe enough. Plaintiff alleges that general population inmates want to harm him because he is a "snitch" and that one general population inmate threatened to stab him to death. Further, Plaintiff notes that prison officials have inadvertently placed several general population inmates in protective management. Plaintiff alleges that eventually the prison officials' carelessness will lead to a general population inmate attacking Plaintiff from within protective management.[4]

Plaintiff's allegations satisfy neither the objective nor the subjective component of an Eighth Amendment claim. As to the objective component, Plaintiff identifies only one general population inmate who

4. We ignore the complaint's bald assertions, such as the complaint's assertion that Plaintiff faces a "serious risk of harm even on protective management." *See Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir.2005) (" 'Bald assertions' will not overcome a Rule 12(b)(6) motion."); *Moore's Federal Practice*, Vol. 2, § 12.34[1][b] (3d ed. 2015) ("[C]onclusory allegations ... are not entitled to the assumption of truth. A court ... can disregard these conclusory allegations and judge the complaint only on well-pleaded factual allegations.").

has threatened him. More importantly, Plaintiff's allegations span three years, yet the complaint identifies only a handful of incidents of inmate misclassification. Further, Plaintiff alleges that only two of those misclassified inmates were dangerous, and Plaintiff does not allege that those two inmates wanted to harm Plaintiff specifically. Finally, Plaintiff does not allege that either dangerous inmate was housed in Plaintiff's cell or that either dangerous inmate threatened Plaintiff. Although Plaintiff's allegations show a "possibility" of injury, Plaintiff's allegations fail to show "extreme" conditions that create a "strong likelihood" of injury.

As to the subjective component, Plaintiff's limited allegations establish, at most, that prison officials acted negligently. Plaintiff's allegations span more than three years, yet Plaintiff identifies only a few incidents of general population inmates (only two of which are described as dangerous) in protective management. *See Zatler v. Wainwright,* 802 F.2d 397, 403 (11th Cir.1986) (holding that no deliberate indifference existed even though " 'on at least one occasion,' while in protective custody, [the plaintiff-prisoner] was housed with another inmate who physically attacked him"). Accordingly, Plaintiff fails to allege facts demonstrating deliberate indifference, and we affirm dismissal of Count I.

### B. Count II: Fourteenth Amendment

Count II alleges that prison officials violated the Fourteenth Amendment by denying Plaintiff equal protection. Liberally construed, the complaint alleges (1) that several defendants violated Plaintiff's equal protection right by failing to "re-recommend[ ]" Plaintiff for interstate transfer and (2) that Sneed violated Plaintiff's equal protection right by failing to approve Plaintiff for interstate transfer.

In a "normal equal protection case," a plaintiff alleges discrimination on the basis of the plaintiff's "belong[ing] to a protected class such as race or gender." *Griffin Indus., Inc. v. Irvin,* 496 F.3d 1189, 1200 (11th Cir.2007). However, the complaint in this action alleges only a "class of one" claim. "[A] 'class of one' claim involves a plaintiff who 'alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.' " *Id.* at 1202. "To be 'similarly situated,' the comparators [similarly situated persons] must be *'prima facie identical in all relevant respects.'* " *Grider v. City of Auburn, Ala.,* 618 F.3d 1240, 1264 (11th Cir.2010). And a plaintiff must allege more than "broad generalities in identifying a comparator." *Griffin Indus.,* 496 F.3d at 1204. Thus, a " 'class of one' plaintiff might fail to state a claim by omitting key factual details in alleging that it is 'similarly situated' to another." *Id.* at 1205.

Neither of Plaintiff's equal protection claims identifies a comparator. Instead, for the first claim (that is, the claim that a prison official failed to "re-recommend" Plaintiff for transfer), Plaintiff states only that "other similarly situated inmates … were re-recommended" for transfer. The complaint's " 'labels and conclusions' … will not do." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Instead, Plaintiff must plead facts, not labels, demonstrating that the other inmates are similarly situated.

For Plaintiff's second claim (that is, the claim that Sneed failed to approve Plaintiff's transfer request), the complaint's most detailed allegation identifies as a comparator only "other" protective management "inmate(s)" who were "labeled informants (snitches)" and who "were …

not having any issues while they were on [protective management] status." Plaintiff's allegation is more detailed but nonetheless deficient. Plaintiff's broad generalities not only fail to identify a specific comparator but also fail to describe the comparator's characteristics "that would be relevant to an objectively reasonable governmental decisionmaker." *Griffin Indus.*, 496 F.3d at 1207. Most importantly, Plaintiff's complaint fails to identify threats facing the comparators.

"Different treatment of dissimilarly situated persons does not violate the equal protection clause." *Id.* Thus, a complaint must identify sufficient facts about a comparator to determine whether the comparator is similarly situated. Plaintiff's complaint fails to satisfy that burden, and we affirm dismissal of Count II.

## C. Count III: First Amendment

Count III alleges that "Defendant(s)" violated the First Amendment by re-confining Plaintiff in retaliation for Plaintiff's complaints about his prison setting.[5]

To state a First Amendment retaliation claim, a plaintiff must allege facts establishing that "(1) his speech was constitutionally protected; (2) [he] suffered adverse action such that the official's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action [the disciplinary punishment] and the protected speech [the grievance]." *O'Bryant v. Finch*, 637 F.3d 1207, 1212 (11th Cir.2011).

█ As discussed above, Plaintiff alleged that prison officials re-confined Plaintiff in retaliation for his complaints. Plaintiff's claim satisfies the first element of a First Amendment retaliation claim because "an inmate is considered to be exercising his First Amendment right of freedom of speech when he complains to the prison's administrators about the conditions of his confinement." *Id.; accord Boxer X v. Harris*, 437 F.3d 1107, 1112 (11th Cir.2006) ("First Amendment rights to free speech and to petition the government for a redress of grievances are violated when a prisoner is punished for filing a grievance concerning the conditions of his imprisonment.").

Plaintiff's claim satisfies the second element because he alleged that he was subjected to disciplinary confinement for his complaints. *See Smith v. Mosley*, 532 F.3d 1270, 1277 (11th Cir.2008) (concluding that 45 days' disciplinary segregation " 'would likely deter a prisoner of ordinary firmness' from complaining about the conditions of his confinement"); *Thaddeus–X v. Blatter*, 175 F.3d 378, 396 (6th Cir.1999) ("In the prison context, an action comparable to transfer to administrative segregation would certainly be adverse.").

Plaintiff satisfies the third element, causal connection, with at least two allegations. First, Plaintiff alleges that on August 6, 2012—after a long series of persistent complaints from Plaintiff, his family, and his friends—Plaintiff submitted "an inmate request in reference to the [interstate] transfer." With that request for transfer, Plaintiff "asked that the [Florida Department of Corrections] rules be adhered to and that a written response to the inmate request ... be provided." The

---

**5.** Count III actually alleges three forms of retaliation: (1) a prison official drafted a disciplinary report that falsely quoted Plaintiff; (2) prison officials re-confined Plaintiff; and (3) prison officials refused to forward Plaintiff's legal work. However, in his appellate brief, Plaintiff affirmatively renounces the first form of alleged retaliation and implicitly renounces the third.

very next day, prison officials re-confined Plaintiff. That temporal proximity can imply causation, particularly at the motion-to-dismiss stage.[6] Second, when Plaintiff submitted the August 6 request—one day before his second confinement began—Craven seemingly ignored Plaintiff's request and instead responded, "[W]e have a place for you." But that place turned out to be disciplinary confinement, not a transfer. Together, for purposes of dismissal, the temporal proximity and Craven's statement satisfy the causation element.

Yet, although Plaintiff stated a claim for First Amendment retaliation in Count III, as a general matter, he fails to support this claim as to each of the eleven-named defendants. The sole allegations sufficient to suggest causation apply only to Craven and Schweinsberg. That is, Plaintiff delivered his August 6 complaint to Craven and Schweinsberg; Craven responded, "[W]e have a place for you"; and one day later, Craven and Schweinsberg recommended Plaintiff's re-confinement.[7]

The magistrate judge's recommendation that Count III be dismissed, and the district court's subsequent adoption of that recommendation, result from a misunderstanding of the particular confinement that Plaintiff asserts to have been retaliatory. The magistrate judge construed the complaint to be alleging that the first confinement on June 12, 2012 was retaliatory. And so interpreting the complaint, the magistrate judge concluded that even had Plaintiff sufficiently alleged facts sufficient to infer causation—which was not at all certain—O'Bryant v. Finch, 637 F.3d 1207 (11th Cir.2011), precluded Plaintiff's claim. Specifically, Plaintiff's first confinement followed on the heels of a finding that he had committed a disciplinary infraction. O'Bryant held that "[i]f a prisoner is found guilty of an actual disciplinary infraction after being afforded due process *and* there was evidence to support the disciplinary panel's fact finding, the prisoner cannot later state a retaliation claim against the prison employee who reported the infraction in a disciplinary report." *Id.* at 1215.

Although there is some support within the complaint for the magistrate judge's construction of the claim as focusing on only the first confinement,[8] the complaint

---

6. *Smith v. Fla. Dep't of Corr.*, 713 F.3d 1059, 1063 (11th Cir.2013) ("[A]ffidavits established, among other things, that [the plaintiff] and other inmates were transferred immediately after filing lawsuits and/or grievances, and inmates who filed lawsuits and grievances were transferred more often than the average inmate. When viewing the evidence, including the affidavits, in the light most favorable to [the plaintiff], he sufficiently established that one could conclude that the protected conduct was a motivating factor behind the [retaliation]."); *Akins v. Fulton Cty., Ga.*, 420 F.3d 1293, 1305 (11th Cir.2005) (holding that a "close temporal proximity between [a public employee's speech] and [a defendant]'s actions suggest[ed] a causal relationship"); *Hill v. Lappin*, 630 F.3d 468, 476 (6th Cir. 2010) ("[E]vidence of temporal proximity between filing grievances and the adverse action provides some support for establishing retaliatory motive.").

7. Plaintiff's allegations could arguably apply to Kelly because Plaintiff stated that he submitted his August 6 complaint to "the institutional classification team which consisted of defendant(s) Craven, Kelly and Schweinsberg." However, Plaintiff subsequently alleges that "defendant(s) Sexton, Craven, [and] Schweinsberg ... made up the Institutional Classification Team." This inconsistency prevents Count III from stating a claim against either Kelly or Sexton. *See Randall v. Scott*, 610 F.3d 701, 705 (11th Cir.2010) ("[T]he complaint ... must 'give [each] defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'"). To include either defendant in this Count, the complaint would have to be amended.

8. For example, the complaint states, "Defendant(s) violated the plaintiff['s] First Amendment [rights] by retaliating against the plaintiff ... when defendant(s) conspired to write

also states that the second confinement on August 7 constituted "blatant retaliation." [9] Further, in his objections to the magistrate judge's report and recommendation, Plaintiff pointed out the magistrate judge's misunderstanding of what Plaintiff had alleged. Plaintiff admitted that the complaint alleges that the June 12 (first) confinement constituted retaliation, but he also stated that he "is *'not'* arguing as an issue (claim) in th[e] complaint [that] the erroneous disciplinary report [constituted retaliation] because though it was an erroneous disciplinary report he was found guilty by the disciplinary team." In other words, although Plaintiff believed that the June 12 confinement constituted retaliation, he had not alleged that this confinement supported his First Amendment retaliation claim. Instead, as Plaintiff's objection further explains, the complaint identifies his August 7 (second) confinement as the retaliation that underlies his claim. Plaintiff's objection supports his argument by identifying several allegations demonstrating that the August 7 confinement constitutes retaliation. For example, Plaintiff identifies several of the allegations discussed above as supporting an inference of causation: (1) the temporal proximity between Plaintiff's August 6 complaint and his August 7 confinement and (2) Craven's August 6 statement "[W]e have a place for you."

Because the magistrate judge and district judge failed to focus on the particular confinement underlying the claim of retaliation and because Plaintiff stated a claim based on this particular confinement, we reverse as to the district court's dismissal of this claim of retaliation in violation of the First Amendment.

## D. Count IV: Fifth Amendment

Count IV alleges that "Defendant(s)" violated Plaintiff's Fifth Amendment right to access the courts by refusing to forward Plaintiff's legal work after his transfer.[10] Plaintiff alleges that the refusal caused him to miss a deadline to appeal in another action.

"[I]n order to assert a claim arising from the denial of meaningful access to the courts, [a plaintiff] must first establish an actual injury." [11] *Barbour v. Haley*, 471

the plaintiff an erroneous disciplinary report and to place the plaintiff on close management under false pretenses...."

9. Admittedly, Plaintiff acknowledges that he was allegedly re-confined under the June 12 disciplinary report. However, that disciplinary report was two-months old at the time of this second confinement. And because Plaintiff had already served the 30 days' confinement called for by that disciplinary violation, Plaintiff alleges that he was re-confined only "under the ruse that it was for [the June 12] disciplinary report." Plaintiff further alleges that "it is unprecedented for an inmate to serve his confinement for a [disciplinary report] and be released from confinement to general population and approximately a month later to be re-locked up in confinement ... for that [original disciplinary report]." Thus, interpreting Plaintiff to be alleging that this second disciplinary confinement was not actually based on the disciplinary infraction for which he had earlier been found guilty, we conclude that on the record before us, *O'Bryant* does not insulate prison officials from suit.

10. Supreme Court decisions "have grounded the right of access to courts in the Article IV Privileges and Immunities Clause, the First Amendment Petition Clause, the Fifth Amendment Due Process Clause, and the Fourteenth Amendment Equal Protection and Due Process Clauses." *Christopher v. Harbury*, 536 U.S. 403, 415 n. 12, 122 S.Ct. 2179, 153 L.Ed.2d 413 (citation omitted).

11. The district court appears not to have addressed the actual-injury requirement. But the actual-injury requirement "derives from the constitutional doctrine of standing." *Cunningham v. Dist. Attorney's Office for Escambia Cty.*, 592 F.3d 1237, 1271 (11th Cir.

F.3d 1222, 1225 (11th Cir.2006). To allege an actual injury, the complaint "must identify a 'nonfrivolous,' 'arguable' underlying claim." *Christopher v. Harbury*, 536 U.S. 403, 415, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002). More specifically, the complaint must describe the underlying claim "well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope." *Cunningham v. Dist. Attorney's Office for Escambia Cty.*, 592 F.3d 1237, 1271 (11th Cir.2010); *accord Christopher*, 536 U.S. at 415, 122 S.Ct. 2179 ("[T]he underlying cause of action … is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation."). For example, if the underlying action is a civil action, the right-of-access claim must "state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a), just as if it were being independently pursued." *Christopher*, 536 U.S. at 417–18, 122 S.Ct. 2179 (footnote omitted).

Count IV identifies an underlying criminal action. Plaintiff asserts that he missed the opportunity to appeal in the underlying action because he lacked his "legal work." However, Plaintiff (who now has his legal work) fails to describe the arguments he would have raised on appeal. Because Plaintiff fails to describe the arguments he would have raised on appeal, we cannot apply the test to determine frivolity. Thus, the complaint cannot support a right-of-access claim.

### CONCLUSION

We conclude that Plaintiff stated a First Amendment retaliation claim against Cra-

ven and Schweinsberg. Accordingly, we **AFFIRM IN PART, REVERSE IN PART,** and **REMAND** this action for further proceedings in accord with this opinion.

2010). And an appellate court may "consider [standing] for the first time on appeal." *Region 8 Forest Serv. Timber Purchasers Council v. Alcock*, 993 F.2d 800, 807 n. 9 (11th Cir. 1993); *see also Al–Amin v. Smith*, 511 F.3d 1317, 1332 (11th Cir.2008) (" '[A]ctual injury'

is a constitutional prerequisite to an inmate's access-to-courts claim."). Further, "we may affirm the district court's judgment on any grounds supported in the record." *Koziara v. City of Casselberry*, 392 F.3d 1302, 1306 n. 2 (11th Cir.2004).